**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAN BERNARDINO COUNTY ON BEHALF OF ARROWHEAD REGIONAL MEDICAL CENTER**<br>400 N Pepper Ave<br>Colton, CA 92324-1801 | **Case No.** |

**ADVENTIST HEALTH dba ADVENTIST HEALTH SPECIALTY BAKERSFIELD fka BAKERSFIELD HEART HOSPITAL**
3001 Sillect Ave.
Bakersfield, CA 93308

**AMERICAN HOSPITAL MANAGEMENT CORPORATION dba MAD RIVER COMMUNITY HOSPITAL**
3800 Janes Rd
Arcata, CA 95521-4742

**ANTELOPE VALLEY HEALTHCARE DISTRICT dba ANTELOPE VALLEY MEDICAL CENTER**
1600 West Avenue J
Lancaster, CA 93534

**BEVERLY COMMUNITY HOSPITAL ASSOCIATION dba BEVERLY HOSPITAL**
c/o Howard M Ehrenberg, Ch. 11 Trustee
1875 Century Park East, Suite 1900
Los Angeles, CA 90067

**CASA COLINA HOSPITAL AND CENTERS FOR HEALTHCARE dba CASA COLINA HOSPITAL**
255 E. Bonita Avenue
Pomona, CA  91767

**CHA HOLLYWOOD MEDICAL CENTER, L.P. DBA HOLLYWOOD PRESBYTERIAN MEDICAL CENTER**
1300 North Vermont Avenue
Los Angeles, CA 90027

**CHCM, INC. dba COSTA MESA MEDICAL CENTER HOSPITAL fka COLLEGE HOSPITAL COSTA MESA**
301 Victoria Street
Costa Mesa, CA  92627

CHINESE HOSPITAL ASSOCIATION dba
CHINESE HOSPITAL, a non-profit public benefit
corporation
845 Jackson Street
San Francisco, CA 94133

CHLB LLC dba COLLEGE MEDICAL CENTER
2776 Pacific Ave
Long Beach, CA 90806-2613

CITY OF EL CENTRO dba EL CENTRO
REGIONAL MEDICAL CENTER
1415 Ross Ave
El Centro, CA 92243

COMMUNITY HOSPITAL OF THE
MONTEREY PENINSULA
23625 Holman Hwy
Monterey, CA 93940-5902

COMMUNITY MEMORIAL HEALTH
SYSTEM dba COMMUNITY MEMORIAL
HOSPITAL SAN BUENAVENTURA dba
COMMUNITY MEMORIAL HEALTHCARE
147 N. Brent Street
Ventura, CA 93003

COUNTY OF CONTRA COSTA dba CONTRA
COSTA REGIONAL MEDICAL CENTER
2500 Alhambra Ave
Martinez, CA 94553

COUNTY OF MONTEREY dba NATIVIDAD
MEDICAL CENTER
1441 Constitution Blvd.
Salinas, CA 93906

COUNTY OF RIVERSIDE dba RIVERSIDE
UNIVERSITY HEALTH SYSTEM - MEDICAL
CENTER
26520 Cactus Ave
Moreno Valley, CA 92555-3927

COUNTY OF SAN MATEO dba SAN MATEO
MEDICAL CENTER
222 W 39th Avenue
San Mateo, CA 94403

COUNTY OF VENTURA dba VENTURA
COUNTY MEDICAL CENTER
300 Hillmont Ave.
Ventura, CA 93003

DAMERON HOSPITAL ASSOCIATION dba
DAMERON HOSPITAL
525 W. Acacia Street
Stockton, CA 95203

DEANCO HEALTHCARE, LLC DBA MISSION
COMMUNITY HOSPITAL
8447 Wilshire Blvd.
Beverly Hills, CA  90211

EISENHOWER MEDICAL CENTER dba
EISENHOWER HEALTH
39000 Bob Hope Dr
Rancho Mirage, CA 92270-3221

EL CAMINO HOSPITAL dba EL CAMINO
HEALTH
2500 Grant Road
Mountain View, CA 9404

ENLOE MEDICAL CENTER
1531 Esplanade
Chico, CA 95926

GOOD SAMARITAN HOSPITAL, LP
901 Olive Drive
Bakersfield, CA 93308

HENRY MAYO NEWHALL MEMORIAL
HOSPITAL dba HENRY MAYO NEWHALL
HOSPITAL
23845 Mcbean Pkwy
Valencia, CA 91355-2083

KAWEAH DELTA HEALTH CARE DISTRICT
DBA KAWEAH HEALTH MEDICAL CENTER
400 W Mineral King Ave.
Visalia, CA 93291-6237

KERN COUNTY HOSPITAL AUTHORITY
1700 Mount Vernon Avenue
Bakersfield, CA 93306

LOMPOC VALLEY MEDICAL CENTER
1515 E. Ocean Ave.
Lompoc, CA 93436

MADERA COMMUNITY HOSPITAL
1250 E. Almond Ave.
Madera, CA 93637

MARIN GENERAL HOSPITAL dba
MARINHEALTH MEDICAL CENTER
250 Bon Air Road
Greenbrae, CA 94904

MARSHALL MEDICAL CENTER
1100 Marshall Way
Placerville, CA 95667

MARTIN LUTHER KING JR.-LOS ANGELES
(MLK-LA) HEALTHCARE CORPORATION
dba MARTIN LUTHER KING, JR.
COMMUNITY HOSPITAL
1680 E. 120th Street
Los Angeles, CA 90059

NORTHBAY HEALTHCARE GROUP dba
NORTHBAY MEDICAL CENTER
1200 B. Gale Wilson Blvd.
Fairfield, CA 94533

OAK VALLEY HOSPITAL DISTRICT
350 South Oak Avenue
Oakdale, CA 95361

OROVILLE HOSPITAL
2767 Olive Highway
Oroville, CA  95966

PACIFICA OF THE VALLEY CORPORATION
dba PACIFICA HOSPITAL OF THE VALLEY
9449 San Fernando Rd
Sun Valley CA 91352

PAJARO VALLEY HEALTH CARE DISTRICT
HOSPITAL CORPORATION dba
WATSONVILLE COMMUNITY HOSPITAL
75 Nielson St
Watsonville, CA 95076-2468

PIONEERS MEMORIAL HEALTHCARE
DISTRICT
207 W. Legion Road
Brawley, CA 92227

POMONA VALLEY HOSPITAL MEDICAL
CENTER
1798 N Garey Ave
Pomona, CA 91767-2918

REDLANDS COMMUNITY HOSPITAL
350 Terracina Blvd
Redlands, CA 92373

SAINT AGNES MEDICAL CENTER
1303 E. Herndon Avenue
Fresno, CA 93720

SALINAS VALLEY MEMORIAL
HEALTHCARE SYSTEM dba SALINAS
VALLEY HEALTH MEDICAL CENTER
450 E Romie Ln
Salinas, CA 93901-4029

SAN ANTONIO REGIONAL HOSPITAL INC.
dba SAN ANTONIO REGIONAL HOSPITAL
999 San Bernardino Road
Upland, CA 91786

SAN GORGONIO MEMORIAL HOSPITAL
600 N Highland Springs Ave
Banning, CA 92220-3046

SIERRA VIEW LOCAL HEALTH CARE
DISTRICT dba SIERRA VIEW MEDICAL
CENTER
465 W. Putnam Ave.
Porterville, CA  93265

SONOMA VALLEY HEALTH CARE
DISTRICT dba SONOMA VALLEY HOSPITAL
347 Andrieux St
Sonoma, CA 95476

THE COUNTY OF SANTA CLARA dba
SANTA CLARA VALLEY MEDICAL CENTER
dba O'CONNOR HOSPITAL dba St. LOUISE
REGIONAL HOSPITAL
70 W. Hedding St.
San Jose, CA 95110-1705

TRI-CITY HEALTHCARE DISTRICT dba TRI-
CITY MEDICAL CENTER
4200 Vista Way
Oceanside, CA  92056

VALLEY PRESBYTERIAN HOSPITAL
15107 Vanowen St
Van Nuys, CA 91405-4542

WASHINGTON TOWNSHIP HEALTH CARE
DISTRICT dba WASHINGTON HOSPITAL and
WASHINGTON HOSPITAL HEALTHCARE
SYSTEM
2000 Mowry Avenue

Fremont, CA 94538

**AHMC ANAHEIM REGIONAL MEDICAL CENTER LP dba ANAHEIM REGIONAL MEDICAL CENTER**
1111 West La Palma Avenue
Anaheim, CA 92801-2881

AHMC GARFIELD MEDICAL CENTER LP dba GARFIELD MEDICAL CENTER
525 N. Garfield Ave
Monterey Park, CA 91754-1202

AHMC GREATER EL MONTE COMMUNITY HOSPITAL LP dba GREATER EL MONTE COMMUNITY HOSPITAL
1701 Santa Anita Ave
South El Monte, CA 91733-3482

AHMC MONTEREY PARK HOSPITAL LP dba MONTEREY PARK HOSPITAL
900 S. Atlantic Blvd.
Monterey Park, CA 91754-4716

AHMC SAN GABRIEL VALLEY MEDICAL CENTER LP dba SAN GABRIEL VALLEY MEDICAL CENTER
438 W. Las Tunas Drive
San Gabriel, CA 91776-1216

AHMC SETON MEDICAL CENTER LLC dba AHMC SETON MEDICAL CENTER, and AHMC SETON MEDICAL CENTER COASTSIDE
1850 Sullivan Ave, Ste 400
Daly City, CA 94015-2200

AHMC WHITTIER HOSPITAL MEDICAL CENTER LP dba WHITTIER HOSPITAL MEDICAL CENTER
9080 Colima Road
Whittier, CA 90605-1600

ALHAMBRA HOSPITAL MEDICAL CENTER L.P. dba ALHAMBRA HOSPITAL MEDICAL CENTER
100 S Raymond Ave
Alhambra, CA 91801-3166

DOCTORS HOSPITAL OF RIVERSIDE LLC dba PARKVIEW COMMUNITY HOSPITAL MEDICAL CENTER
3865 Jackson Street

Riverside, CA 92503-3919

**HAYWARD SISTERS HOSPITAL dba ST. ROSE HOSPITAL**
27200 Calaroga Avenue
Hayward, CA 94545

OLYMPIA HEALTH CARE, LLC dba OLYMPIA MEDICAL CENTER
101 N. Brand Boulevard, Suite 1920
Glendale, CA 91203

SHERMAN/GRAYSON HOSPITAL, LLC dba WILSON N. JONES REGIONAL MEDICAL CENTER
500 N. Highland Avenue
Sherman, TX 75092

**CHHP HOLDINGS II, LLC dba COMMUNITY HOSPITAL OF HUNTINGTON PARK**
2623 E Slauson Ave
Huntington Park, CA 90255-2926

CPH HOSPITAL MANAGEMENT LLC dba COAST PLAZA HOSPITAL
13100 Studebaker Rd
Norwalk, CA 90650-2531

ELADH LP dba EAST LOS ANGELES DOCTORS HOSPITAL
4060 Whittier Blvd
Los Angeles, CA 90023-2526

GARDENA HOSPITAL, L.P. dba MEMORIAL HOSPITAL OF GARDENA
1145 W Redondo Beach Blvd
Gardena, CA 90247-3511

PIPELINE - WEISS MEMORIAL HOSPITAL, LLC dba WEISS MEMORIAL HOSPITAL
4646 N Marine Dr
Chicago, IL 60640

PIPELINE - WEST SUBURBAN MEDICAL CENTER, LLC dba WEST SUBURBAN MEDICAL CENTER
3 Erie St
Oak Park, IL 60302

PIPELINE EAST DALLAS, LLC dba WHITE ROCK MEDICAL CENTER
9440 Poppy Dr

Dallas, TX 75218

**CEDARS-SINAI MARINA HOSPITAL**
4650 Lincoln Blvd
Marina Del Rey, CA 90292-6306

CEDARS-SINAI MEDICAL CENTER
8700 Beverly Blvd
Los Angeles, CA 90048-1804

PASADENA HOSPITAL ASSOCIATION, LTD.
dba HUNTINGTON HOSPITAL
100 W California Blvd
Pasadena, CA 91105-3010

TORRANCE MEMORIAL MEDICAL CENTER
3330 Lomita Blvd
Torrance, CA  90505-5002

**FRESNO COMMUNITY HOSPITAL AND
MEDICAL CENTER dba CLOVIS
COMMUNITY MEDICAL CENTER**
2755 Herndon Ave
Clovis, CA 93611-6800

FRESNO COMMUNITY HOSPITAL
AND MEDICAL CENTER dba COMMUNITY
REGIONAL MEDICAL CENTER
2823 Fresno St
Fresno, CA 93721-1324

**GOLETA VALLEY COTTAGE HOSPITAL**
351 S Patterson Ave
Santa Barbara, CA 93111-2403

SANTA BARBARA COTTAGE HOSPITAL
400 W Pueblo St
Santa Barbara, CA 93105-4353

**BAKERSFIELD MEMORIAL HOSPITAL**
420 34th St
Bakersfield, CA 93301-2237

COMMUNITY HOSPITAL OF SAN
BERNARDINO
1805 Medical Center Dr
San Bernardino, CA 92411-1214

DIGNITY COMMUNITY CARE dba
CALIFORNIA HOSPITAL MEDICAL CENTER
1401 S Grand Ave
Los Angeles, CA 90015-3010

DIGNITY COMMUNITY CARE dba
CHANDLER REGIONAL MEDICAL CENTER
1955 W Frye Rd
Chandler, AZ 85224-6282

DIGNITY COMMUNITY CARE dba FRENCH
HOSPITAL MEDICAL CENTER
1911 Johnson Ave
San Luis Obispo, CA 93401-4131

DIGNITY COMMUNITY CARE dba
GLENDALE MEMORIAL HOSPITAL AND
HEALTH CENTER
1420 S Central Ave
Glendale, CA 91204-2508

DIGNITY COMMUNITY CARE dba
METHODIST HOSPITAL OF SACRAMENTO
7500 Hospital Dr
Sacramento, CA 95823-5403

DIGNITY COMMUNITY CARE dba
NORTHRIDGE HOSPITAL MEDICAL
CENTER
18300 Roscoe Blvd
Northridge, CA 91325-4105

DIGNITY COMMUNITY CARE dba SEQUOIA
HOSPITAL
170 Alameda De Las Pulgas
Redwood City, CA 94062-2751

DIGNITY COMMUNITY CARE dba
WOODLAND MEMORIAL HOSPITAL
1325 Cottonwood St
Woodland, CA 95695-5131

DIGNITY HEALTH dba DOMINICAN
HOSPITAL
1555 Soquel Dr
Santa Cruz, CA 95065-1705

DIGNITY HEALTH dba MARIAN REGIONAL
MEDICAL CENTER
1400 East Church St
Santa Maria, CA 93454-5906

DIGNITY HEALTH dba MERCY GENERAL
HOSPITAL
4001 J St
Sacramento, CA 95819-3626

DIGNITY HEALTH dba MERCY GILBERT
MEDICAL CENTER
3555 S Val Vista Dr
Gilbert, AZ 85297-7323

DIGNITY HEALTH dba MERCY HOSPITAL
OF FOLSOM
1650 Creekside Dr
Folsom, CA 95630-3400

DIGNITY HEALTH dba MERCY MEDICAL
CENTER
333 Mercy Ave
Merced, CA 95340-8319

DIGNITY HEALTH dba MERCY MEDICAL
CENTER REDDING
2175 Rosaline Ave
Redding, CA 96001-2509

DIGNITY HEALTH dba MERCY SAN JUAN
MEDICAL CENTER
6501 Coyle Ave
Carmichael, CA 95608-0306

DIGNITY HEALTH dba ST BERNARDINE
MEDICAL CENTER
2101 North Waterman Avenue
San Bernardino, CA 92404-4836

DIGNITY HEALTH dba ST MARY MEDICAL
CENTER
1050 Linden Ave
Long Beach, CA 90813-3321

DIGNITY HEALTH dba ST MARYS MEDICAL
CENTER
450 Stanyan St
San Francisco, CA 94117-1079

DIGNITY HEALTH dba ST ROSE
DOMINICAN HOSPITALS - SAN MARTIN
CAMPUS
8280 W. Warm Springs Rd.
Las Vegas, NV 89113-3612

DIGNITY HEALTH dba ST. JOHN'S
REGIONAL MEDICAL CENTER
1600 N Rose Ave
Oxnard, CA 93030

DIGNITY HEALTH dba ST. JOHN'S
HOSPITAL CAMARILLO fka ST. JOHN'S
PLEASANT VALLEY HOSPITAL
2309 Antonio Ave
Camarillo, CA 93010-1414

DIGNITY HEALTH dba ST. ROSE
DOMINICAN HOSPITAL - SIENA CAMPUS
3001 Saint Rose Pkwy
Henderson, NV 89052-3839

DIGNITY HEALTH dba ST. ROSE
DOMINICAN HOSPITAL- ROSE DE LIMA
CAMPUS
102 East Lake Mead Parkway
Henderson, NV 89015-5575

DIGNITY HEALTH dba MERCY HOSPITAL
2215 Truxtun Avenue
Bakersfield, CA 93301

PORT CITY OPERATING COMPANY, LLC
dba ST JOSEPHS MEDICAL CENTER OF
STOCKTON
1800 N California St
Stockton, CA 95204-6019

SAINT FRANCIS MEMORIAL HOSPITAL
900 Hyde St
San Francisco, CA 94109-4806

SIERRA NEVADA MEMORIAL-MINERS
HOSPITAL dba SIERRA NEVADA
MEMORIAL HOSPITAL
155 Glasson Way
Grass Valley, CA 95945-5723

ST. JOSEPH'S HOSPITAL AND MEDICAL
CENTER
350 W THOMAS Rd
Phoenix, AZ 85013

**EMANATE HEALTH FOOTHILL
PRESBYTERIAN HOSPITAL**
250 S Grand Ave
Glendora, CA 91741-4218

EMANATE HEALTH MEDICAL CENTER dba
EMANATE HEALTH INTER-COMMUNITY
HOSPITAL
210 W San Bernardino Rd
Covina, CA 91723-1515

**JOHN MUIR HEALTH dba JOHN MUIR MEDICAL CENTER - CONCORD CAMPUS**
2540 East St
Concord, CA 94520-1906

JOHN MUIR HEALTH dba JOHN MUIR MEDICAL CENTER - WALNUT CREEK CAMPUS
1601 Ygnacio Valley Rd
Walnut Creek, CA 94598-3122

**KECK MEDICAL CENTER OF USC dba KECK HOSPITAL OF USC**
1500 San Pablo St
Los Angeles, CA 90033-5313

USC ARCADIA HOSPITAL fka METHODIST HOSPITAL OF SOUTHERN CALIFORNIA
300 West Huntington Drive
Arcadia, CA 91007

USC VERDUGO HILLS HOSPITAL
1812 Verdugo Blvd
Glendale, CA 91208-1407

**ANAHEIM GLOBAL MEDICAL CENTER, INC. dba ANAHEIM GLOBAL MEDICAL CENTER**
1025 S. Anaheim Boulevard
Anaheim, CA 92805

CHAPMAN GLOBAL MEDICAL CENTER, INC. dba CHAPMAN GLOBAL MEDICAL CENTER
2601 E. Chapman Avenue
Orange, CA 92869

KPC GLOBAL MEDICAL CENTERS, INC. dba HEMET GLOBAL MEDICAL CENTER
1117 E. Devonshire Ave
Hemet, CA 92543

KPC GLOBAL MEDICAL CENTERS, INC. dba MENIFEE GLOBAL MEDICAL CENTER
28400 McCall Boulevard
Sun City, CA 92585

ORANGE COUNTY GLOBAL MEDICAL CENTER, INC. dba ORANGE COUNTY GLOBAL MEDICAL CENTER
1001 N. Tustin Avenue
Santa Ana, CA 92705

SOUTH COAST GLOBAL MEDICAL CENTER,
INC. dba SOUTH COAST GLOBAL MEDICAL
CENTER
2701 S. Bristol Street
Santa Ana, CA 92704

VICTOR VALLEY HOSPITAL ACQUISITION,
INC. dba VICTOR VALLEY GLOBAL
MEDICAL CENTER
15248 Eleventh Street
Victorville, CA 92395

**L.A. DOWNTOWN MEDICAL CENTER,**
**LLC dba L.A. DOWNTOWN MEDICAL**
**CENTER**
1711 W Temple Street
Los Angeles, CA 90026

L.A. DOWNTOWN MEDICAL CENTER, LLC
dba WEST COVINA MEDICAL CENTER
725 S Orange Ave.
West Covina, CA 91790

**LOMA LINDA UNIVERSITY CHILDREN'S**
**HOSPITAL**
11234 Anderson St.
Loma Linda, CA 92354

LOMA LINDA UNIVERSITY MEDICAL
CENTER, INC.
11234 Anderson St.
Loma Linda, CA 92354

LOMA LINDA UNVERSITY MEDICAL
CENTER MURRIETA
28062 Baxter Rd
Murrieta, CA 92563

**LONG BEACH MEMORIAL MEDICAL**
**CENTER dba MEMORIALCARE LONG**
**BEACH MEDICAL CENTER**
2801 Atlantic Ave
Long Beach, CA 90806-1701

ORANGE COAST MEMORIAL MEDICAL
CENTER dba MEMORIALCARE ORANGE
COAST MEDICAL CENTER
9920 Talbert Ave
Fountain Valley, CA 92708-5153

SADDLEBACK MEMORIAL MEDICAL
CENTER dba MEMORIALCARE
SADDLEBACK MEDICAL CENTER
24451 Health Center Dr
Laguna Hills, CA 92653-3689

**PALOMAR HEALTH dba PALOMAR
MEDICAL CENTER ESCONDIDO**
2185 Citracado Pkwy
Escondido, CA 92029

PALOMAR HEALTH dba PALOMAR
MEDICAL CENTER POWAY
15615 Pomerado Rd
Poway, CA 92064

**PIH HEALTH DOWNEY HOSPITAL**
11500 Brookshire Ave
Downey, CA 90241-4917

PIH HEALTH GOOD SAMARITAN HOSPITAL
1245 Wilshire Blvd.
Los Angeles, CA 90017-4812

PIH HEALTH WHITTIER HOSPITAL
12401 Washington Blvd
Whittier, CA 90602-1006

**ALTA LOS ANGELES HOSPITALS, INC.
dba LOS ANGELES COMMUNITY
HOSPITAL**
4081 E Olympic Blvd
Los Angeles, CA 90023-3330

ALTA NEWPORT HOSPITAL, LLC dba
FOOTHILL REGIONAL MEDICAL CENTER
14662 Newport Ave
Tustin, CA 92780-6064

PROSPECT OLDCO NJ, INC. fka PROSPECT
EOGH, INC. dba EAST ORANGE GENERAL
HOSPITAL
3824 Hughes Avenue
Culver City, CA 90232

PROSPECT CCMC, LLC dba CROZER-
CHESTER MEDICAL CENTER
One Medical Center Blvd
Upland, PA 19013-3902

PROSPECT CHARTERCARE RWMC, LLC dba
ROGER WILLIAMS MEDICAL CENTER
825 Chalkstone Ave

Providence, RI 02908-4735

PROSPECT CHARTERCARE SJHSRI, LLC dba
OUR LADY OF FATIMA HOSPITAL
200 High Service Ave
North Providence, RI 02904-5113

PROSPECT DCMH, LLC dba DELAWARE
COUNTY MEMORIAL HOSPITAL
501 North Lansdowne Avenue
Drexel Hill, PA 19026-1114

PROSPECT MANCHESTER HOSPITAL, INC.
dba MANCHESTER MEMORIAL
HOSPITAL
71 Haynes St
Manchester, CT 06040-4131

PROSPECT ROCKVILLE HOSPITAL, INC. dba
ROCKVILLE GENERAL HOSPITAL
31 Union Street
Vernon, CT  06066-3126

PROSPECT WATERBURY, INC. dba
WATERBURY HOSPITAL
64 Robbins St
Waterbury, CT 06708-2613

SOUTHERN CALIFORNIA HEALTHCARE
SYSTEM, INC dba SOUTHERN CALIFORNIA
HOSPITAL AT HOLLYWOOD
6245 De Longpre Ave
Hollywood, CA 90028-8253

**SCRIPPS HEALTH dba SCRIPPS GREEN
HOSPITAL**
10666 N Torrey Pines Rd
La Jolla, CA 92037-1027

SCRIPPS HEALTH dba SCRIPPS MEMORIAL
HOSPITAL ENCINITAS
354 Santa Fe Dr
Encinitas, CA 92024-5142

SCRIPPS HEALTH dba SCRIPPS MEMORIAL
HOSPITAL LA JOLLA
9888 Genesee Ave
La Jolla, CA 92037-1205

SCRIPPS HEALTH dba SCRIPPS MERCY
HOSPITAL
4077 5Th Ave
San Diego, CA 92103-2105

**GROSSMONT HOSPITAL CORPORATION**
5555 Grossmont Center Dr
La Mesa, CA 91942-3019

SHARP CHULA VISTA MEDICAL CENTER
751 Medical Center Ct
Chula Vista, CA 91911-6617

SHARP CORONADO HOSPITAL AND
HEALTHCARE CENTER
250 Prospect Pl
Coronado, CA 92118-1943

SHARP MEMORIAL HOSPITAL
7901 Frost St
San Diego, CA 92123-2701

**STANFORD HEALTH CARE**
500 Pasteur Drive, MC 5690
Palo Alto, CA 94304

STANFORD HEALTH CARE TRI-VALLEY
5555 W Las Positas Blvd
Pleasanton, CA 94588-4000

**SUTTER BAY HOSPITALS dba ALTA
BATES MEDICAL CENTER**
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba ALTA BATES
SUMMIT MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba CALIFORNIA
PACIFIC MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba CPMC R.K.
DAVIS MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba EDEN
MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba MILLS-
PENINSULA MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba NOVATO
COMMUNITY HOSPITAL
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba ST. LUKES
HOSPITAL
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
DELTA MEDICAL CENTER
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
MATERNITY & SURGERY CENTER OF
SANTA CRUZ
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER BAY HOSPITALS dba SUTTER
MEDICAL CENTER OF SANTA ROSA
2000 Powell Street, 10th Floor
Emeryville, CA 94608

SUTTER VALLEY HOSPITALS dba
MEMORIAL MEDICAL CENTER
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
AUBURN FAITH HOSPITAL
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
DAVIS HOSPITAL
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
MEDICAL CENTER - SACRAMENTO
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
ROSEVILLE MEDICAL CENTER

2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
SOLANO MEDICAL CENTER
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

SUTTER VALLEY HOSPITALS dba SUTTER
TRACY COMMUNITY HOSPITAL
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

TWIN CITIES SURGICAL HOSPITAL, LLC
dba SUTTER SURGICAL HOSPITAL - NORTH
VALLEY
2700 Gateway Oaks Blvd, Suite 2200
Sacramento, CA 95833

**THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba RONALD REAGAN
UCLA MEDICAL CENTER**
757 Westwood Plaza
Los Angeles, CA 90095

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba SANTA MONICA UCLA
MEDICAL CENTER & ORTHOPAEDIC
HOSPITAL
1250 16th St.
Santa Monica, CA  90404-1249

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UCSD MEDICAL CENTER
200 W Arbor Drive
San Diego, CA 92103-1422

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UCSF MEDICAL CENTER
1855 Folsom St. Ste 224
Box 0729
San Francisco, CA 94143-0729

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UNIVERSITY OF
CALIFORNIA DAVIS MEDICAL CENTER
2315 Stockton Boulevard
Sacramento, CA 95817-2201

THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA dba UNIVERSITY OF
CALIFORNIA IRVINE MEDICAL CENTER
101 The City Dr S

18

Orange, CA 92868-3201

**ADVENTIST HEALTH DELANO**
1401 Garces Hwy
Delano, CA 93215-3660

ADVENTIST HEALTH TULARE
869 N Cherry St
Tulare, CA 93274-2207

CASTLE MEDICAL CENTER dba ADVENTIST
HEALTH CASTLE
640 Ulukahiki St
Kailua, HI 96734-4454

FEATHER RIVER HOSPITAL dba
ADVENTIST HEALTH FEATHER RIVER
5974 Pentz Road
Paradise, CA 95969

GLENDALE ADVENTIST MEDICAL CENTER
dba ADVENTIST HEALTH GLENDALE
1509 Wilson Ter
Glendale, CA 91206-4007

HANFORD COMMUNITY HOSPITAL dba
ADVENTIST HEALTH HANFORD
115 Mall Dr
Hanford, CA 93230-5786

LODI MEMORIAL HOSPITAL ASSOCIATION,
INC.dba ADVENTIST HEALTH LODI
MEMORIAL
975 S Fairmont Ave
Lodi, CA 95240-5118

PORTLAND ADVENTIST MEDICAL CENTER
dba ADVENTIST HEALTH PORTLAND
10123 SE Market Street
Portland, OR 97216

REEDLEY COMMUNITY HOSPITAL dba
ADVENTIST HEALTH REEDLEY
372 W Cypress Ave
Reedley, CA 93654-2113

SAN JOAQUIN COMMUNITY HOSPITAL dba
ADVENTIST HEALTH BAKERSFIELD
2615 Chester Ave
Bakersfield, CA 93301-2014

SIMI VALLEY HOSPITAL AND HEALTH
CARE SERVICES dba ADVENTIST HEALTH

SIMI VALLEY
2975 Sycamore Dr
Simi Valley, CA 93065-1201

ST. HELENA HOSPITAL dba ADVENTIST
HEALTH ST. HELENA
10 Woodland Rd
Saint Helena, CA 94574-9554

UKIAH ADVENTIST HOSPITAL dba
ADVENTIST HEALTH UKIAH VALLEY
275 Hospital Dr
Ukiah, CA 95482-4531

WHITE MEMORIAL MEDICAL CENTER dba
ADVENTIST HEALTH WHITE MEMORIAL
1720 E Cesar E Chavez Ave
Los Angeles, CA 90033-2414

**KAISER FOUNDATION HEALTH PLAN OF
WASHINGTON dba KAISER
PERMANENTE CENTRAL HOSPITAL**
201 16th Ave E
Seattle, WA 98112-5226

KAISER FOUNDATION HOSPITAL dba
KAISER FOUNDATION HOSPITAL - SAN
RAFAEL
99 Montecillo Rd
San Rafael, CA 94903

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
3288 Moanalua Rd
Honolulu, HI 96819-1469

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
ANTIOCH
4501 Sand Creek Rd
Antioch, CA 94531-8687

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
FONTANA
9961 Sierra Ave
Fontana, CA 92335-6720

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
REDWOOD CITY
1100 Veterans Blvd
Redwood City, CA 94063-2037

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
SACRAMENTO
2025 Morse Ave
Sacramento, CA 95825-2115

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL - SANTA
CLARA
700 Lawrence Expy
Santa Clara, CA 95051-5173

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL & REHAB
CENTER - VALLEJO
975 Sereno Dr
Vallejo, CA 94589

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
DOWNEY
9333 Imperial Hwy
Downey, CA 90242-2812

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
FREMONT
39400 Paseo Padre Pkwy
Fremont, CA 94538-2310

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL LOS
ANGELES
4867 W Sunset Blvd
Los Angeles, CA 90027-5969

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
OAKLAND RICHMOND
275 W Macarthur Blvd
Oakland, CA 94611-5641

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
PANORAMA CITY
13652 Cantara St
Panorama City, CA 91402-5423

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
RIVERSIDE

10800 Magnolia Ave
Riverside, CA 92505-3043

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SAN
FRANCISCO
2425 Geary Blvd
San Francisco, CA 94115-3358

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SAN JOSE
250 Hospital Parkway
San Jose, CA 95119-1103

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL- SOUTH
BAY
25825 Vermont Ave
Harbor City, CA 90710-3518

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SOUTH
SACRAMENTO
6600 Bruceville Rd
Sacramento, CA 95823-4671

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL SOUTH
SAN FRANCISCO
1200 El Camino Real
South San Francisco, CA 94080-3208

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL WALNUT
CREEK
1425 S Main St
Walnut Creek, CA 94596-5318

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL WEST
LOS ANGELES
6041 Cadillac Ave
Los Angeles, CA 90034-1702

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
WOODLAND HILLS
5601 De Soto Ave
Woodland Hills, CA 91367-6701

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL- ZION
4647 Zion Ave

San Diego, CA 92120

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITALS -
ORANGE COUNTY - ANAHEIM
3440 E La Palma Ave
Anaheim, CA 92806-2020

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
MANTECA
1777 W Yosemite Ave
Manteca, CA 95337-5130

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
MORENO VALLEY
27300 Iris Ave
Moreno Valley, CA 92555-4802

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
ROSEVILLE
1600 Eureka Rd
Roseville, CA 95661-3027

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
SAN LEANDRO
2500 Merced Street
San Leandro, CA 94577-4201

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL -
SANTA ROSA
401 Bicentennial Way
Santa Rosa, CA 95403-2149

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
VACAVILLE
1 Quality Dr
Vacaville, CA 95688-9494

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL-
WESTSIDE
2875 NW Stucki Ave
Hillsboro, OR 97124-5806

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
BALDWIN PARK

1011 Baldwin Park Blvd
Baldwin Park, CA 91706-5806

KAISER FOUNDATION HOSPITALS dba
KAISER FOUNDATION HOSPITAL
FRESNO
7300 N Fresno St
Fresno, CA 93720-2941

KAISER FOUNDATION HOSPITALS dba
KAISER SUNNYSIDE MEDICAL
CENTER
10180 Se Sunnyside Rd
Clackamas, OR 97015-8970

**PRIME HEALTHCARE PARADISE
VALLEY, LLC dba PARADISE VALLEY
HOSPITAL**
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE ANAHEIM, LLC dba
WEST ANAHEIM MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
FRANCIS, LLC dba SAINT FRANCIS
MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ENCINO,
LLC dba ENCINO HOSPITAL MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

EAST VALLEY GLENDORA HOSPITAL, LLC
dba EAST VALLEY GLENDORA HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - GARDEN
GROVE, LLC dba GARDEN GROVE
HOSPITAL & MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE HUNTINGTON
BEACH, LLC dba HUNTINGTON BEACH
HOSPITAL
3480 E Guasti Road

Ontario, CA 91761

PRIME HEALTHCARE LA PALMA, LLC dba
LA PALMA INTERCOMMUNITY HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

VERITAS HEALTH SERVICES, LLC dba
CHINO VALLEY MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAN
DIMAS, LLC dba SAN DIMAS COMMUNITY
HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

DESERT VALLEY HOSPITAL, LLC dba
DESERT VALLEY HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE CENTINELA, LLC dba
CENTINELA HOSPITAL MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
SHERMAN OAKS, LLC dba SHERMAN OAKS
HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

ALVARADO HOSPITAL, LLC dba
ALVARADO HOSPITAL MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
MONTCLAIR, LLC dba MONTCLAIR
HOSPITAL MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SHASTA,
LLC dba SHASTA REGIONAL MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - LEHIGH
ACRES, LLC dba LEHIGH REGIONAL

MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE FOUNDATION -
SOUTHERN REGIONAL, LLC dba SOUTHERN
REGIONAL MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - MONROE,
LLC dba MONROE HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAINT
JOHN LEAVENWORTH, LLC dba SAINT
JOHN HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
PROVIDENCE, LLC dba PROVIDENCE
MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - PORT
HURON, LLC dba LAKE HURON MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - GARDEN
CITY, LLC dba GARDEN CITY HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - KANSAS
CITY, LLC dba ST. JOSEPH MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - BLUE
SPRINGS, LLC dba ST. MARY'S MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

NORTH VISTA HOSPITAL, LLC dba NORTH
VISTA HOSPITAL
3480 E Guasti Road

Ontario, CA 91761

PRIME HEALTHCARE SERVICES - RENO,
LLC dba ST. MARY'S REGIONAL MEDICAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
MARY'S PASSAIC, LLC dba ST. MARY'S
GENERAL HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - SAINT
CLARE'S, LLC dba ST. CLARE'S HOSPITAL
DENVILLE
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - ST.
MICHAEL'S, LLC dba ST. MICHAEL'S
MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - LOWER
BUCKS, LLC dba LOWER BUCKS HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
SUBURBAN HOSPITAL, LLC dba SUBURBAN
COMMUNITY HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
ROXBOROUGH, LLC dba ROXBOROUGH
MEMORIAL HOSPITAL
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
LANDMARK, LLC dba LANDMARK
MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

DALLAS MEDICAL CENTER, LLC dba
DALLAS MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES -
MESQUITE, LLC dba DALLAS REGIONAL
MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

HARLINGEN MEDICAL CENTER, LP dba
HARLINGEN MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

PRIME HEALTHCARE SERVICES - PAMPA,
LLC dba PAMPA REGIONAL MEIDCAL
CENTER
3480 E Guasti Road
Ontario, CA 91761

MISSION HOSPITAL, INC. dba MISSION
REGIONAL MEDICAL CENTER
3480 E Guasti Road
Ontario, CA 91761

**COVENANT MEDICAL CENTER**
3615 19th St
Lubbock, TX 79410-1203

HOAG MEMORIAL HOSPITAL
PRESBYTERIAN
One Hoag Drive
Newport Beach, CA 92658-6100

HOAG ORTHOPEDIC INSTITUTE, LLC
162050 Sand Canyon Ave
Irvine, CA 92618

KADLEC REGIONAL MEDICAL CENTER
888 Swift Blvd
Richland, WA 99352-3514

LUBBOCK HERITAGE HOSPITAL, LLC. dba
GRACE SURGICAL HOSPITAL
7509 Marsha Sharp Fwy
Lubbock, TX 79407-8202

METHODIST HOSPITAL LEVELLAND dba
COVENANT HOSPITAL LEVELLAND
1900 College Ave
Levelland, TX 79336-6508

METHODIST HOSPITAL PLAINVIEW TEXAS
dba COVENANT HOSPITAL PLAINVIEW

2601 Dimmitt Road
Plainview, TX 79072-1833

MISSION HOSPITAL REGIONAL MEDICAL
CENTER dba PROVIDENCE MISSION
HOSPITAL
27700 Medical Center Rd
Mission Viejo, CA 92691-6426

NORCAL HEALTHCONNECT LLC dba
PETALUMA VALLEY HOSPITAL
400 N McDowell Blvd
Petaluma, CA 94954-2339

PROVIDENCE HEALTH & SERVICES -
OREGON dba PROVIDENCE WILLAMETTE
FALLS MEDICAL CENTER
1500 Division St
Oregon City, OR  97045-1527

PROVIDENCE HEALTH & SERVICES-  WA
dba PROV REGIONAL MED CTR EVERETT
1321 Colby Ave
Everett, WA 98201-1665

PROVIDENCE HEALTH & SERVICES – WA
dba PROV SACRED HRT MED CTR &
CHILDS HOSP
101 W 8Th Ave
Spokane, WA 99204-2307

PROVIDENCE HEALTH & SERVICES –
WASHINGTON dba PROVIDENCE HOLY
FAMILY HOSPITAL
5633 N Lidgerwood St
Spokane, WA 99208-1224

PROVIDENCE HEALTH & SERVICES -
WASHINGTON dba PROVIDENCE ST MARY
MEDICAL CENTER
401 W Poplar St
Walla Walla, WA 99362-2846

PROVIDENCE HEALTH & SERVICES MT dba
PROVIDENCE ST PATRICK HOSPITAL
500 W Broadway St
Missoula, MT 59802-4008

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE MEDFORD
MEDICAL CENTER
1111 Crater Lake Ave
Medford, OR 97504-6241

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE MILWAUKIE
HOSPITAL
10150 Se 32Nd Ave
Milwaukie, OR 97222-6516

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE NEWBERG
MEDICAL CENTER
1001 N Providence Dr
Newberg, OR 97132-7485

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE PORTLAND
MEDICAL CENTER
4805 Ne Glisan St
Portland, OR 97213-2933

PROVIDENCE HEALTH & SERVICES
OREGON dba PROVIDENCE ST VINCENT
MEDICAL CENTER
9205 SW Barnes Rd
Portland, OR 97225-6603

PROVIDENCE HEALTH & SERVICES
WASHINGTON dba PROVIDENCE ALASKA
MEDICAL CENTER
3200 Providence Dr
Anchorage, AK 99508-4615

PROVIDENCE HEALTH & SERVICES
WASHINGTON dba PROVIDENCE ST PETER
HOSPITAL
413 Lilly Rd NE
Olympia, WA 98506-5166

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE
HOLY CROSS MEDICAL CENTER
15031 Rinaldi St
Mission Hills, CA 91345-1207

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE
LITTLE COMPANY OF MARY MEDICAL
CENTER SAN PEDRO
1300 W 7Th St
San Pedro, CA 90732-3505

PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA dba PROVIDENCE

SAINT JOSEPH MEDICAL CENTER
501 S Buena Vista St
Burbank, CA 91505-4809

PROVIDENCE HEALTH SYSTEM SOUTHERN
CALIFORNIA dba PROVIDENCE LITTLE
COMPANY OF MARY MEDICAL CENTER
TORRANCE
4101 Torrance Blvd
Torrance, CA 90503-4607

PROVIDENCE SAINT JOHN'S HEALTH
CENTER dba SAINT JOHN'S HEALTH
CENTER
2121 Santa Monica Blvd
Santa Monica, CA 90404-2303

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE QUEEN
OF THE VALLEY MEDICAL CENTER
1000 Trancas St
Napa, CA 94558-2906

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE ST.
JOSEPH HOSPITAL
2700 Dolbeer St
Eureka, CA 95501-4736

ST JOSEPH HEALTH NORTHERN
CALIFORNIA LLC dba PROVIDENCE SANTA
ROSA MEMORIAL HOSPITAL
1165 Montgomery Dr
Santa Rosa, CA 95405-4801

ST JOSEPH HOSPITAL OF ORANGE A CORP
dba PROVIDENCE ST. JOSEPH HOSPITAL
1100 W Stewart Dr
Orange, CA 92868-3849

ST MARY MEDICAL CENTER dba
PROVIDENCE ST. MARY MEDICAL CENTER
18300 US Highway 18
Apple Valley, CA 92307-2206

ST. JUDE HOSPITAL INC dba PROVIDENCE
ST. JUDE MEDICAL CENTER
101 E Valencia Mesa Dr
Fullerton, CA 92835-3809

SWEDISH EDMONDS
21601 76Th Ave W
Edmonds, WA 98026-7507

SWEDISH HEALTH SERVICES dba SWEDISH
MEDICAL CENTER
747 Broadway
Seattle, WA 98122-4379

SWEDISH HEALTH SERVICES dba SWEDISH
MEDICAL CENTER CHERRY HILL
500 17th Ave
Seattle, WA 98122-5711

SWEDISH HEALTH SERVICES dba
SWEDISH/ISSAQUAH
751 NE Blakely Dr
Issaquah, WA 98029-6201

TARZANA MEDICAL CENTER, LLC dba
PROVIDENCE CEDARS-SINAI TARZANA
MEDICAL CENTER
18321 Clark St
Tarzana, CA 91356-3501

**AMISUB (SFH), INC. dba SAINT FRANCIS
HOSPITAL**
14201 Dallas Parkway
Dallas, TX 75254

AMISUB OF SOUTH CAROLINA, INC. dba
PIEDMONT MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

BBH BMC, LLC  dba BROOKWOOD BAPTIST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

BBH CBMC, LLC  dba CITIZENS BAPTIST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

BBH PBMC, LLC dba PRINCETON BAPTIST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

BBH SBMC, LLC dba SHELBY BAPTIST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

BBH WBMC, LLC  dba WALKER BAPTIST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

CCMC HOLDINGS, INC. fka COASTAL
CAROLINA MEDICAL CENTER, INC. dba
COASTAL CAROLINA HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

CGH HOSPITAL, LTD.  dba CORAL GABLES
HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

DELRAY MEDICAL CENTER, INC. dba
DELRAY MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

DESERT REGIONAL MEDICAL CENTER,
INC. fka TENET HEALTHSYSTEM DESERT,
INC. dba DESERT REGIONAL MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

DOCTORS HOSPITAL OF MANTECA, INC.
dba DOCTORS HOSPITAL OF MANTECA
14201 Dallas Parkway
Dallas, TX 75254

DOCTORS MEDICAL CENTER OF
MODESTO, INC. dba DOCTORS MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

DOCTORS MEDICAL CENTER OF
MODESTO, INC. dba EMANUEL MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

ECMC HOLDINGS, INC. fka EAST COOPER
COMMUNITY HOSPITAL, INC. dba EAST
COOPER MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

FOUNTAIN VALLEY REGIONAL HOSPITAL
& MEDICAL CENTER dba FOUNTAIN
VALLEY REGIONAL HOSPITAL & MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

GOOD SAMARITAN MEDICAL CENTER,
INC. dba GOOD SAMARITAN MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

HC HIALEAH HOLDINGS, INC. fka TENET
HIALEAH HEALTHSYSTEM, INC. fka Hialeah
Hospital, Inc. dba Hialeah Hospital
14201 Dallas Parkway
Dallas, TX 75254

HDMC HOLDINGS, L.L.C. dba HI-DESERT
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

HOSPITAL DEVELOPMENT OF WEST
PHOENIX, INC. dba ABRAZO WEST CAMPUS
fka WEST VALLEY HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

JFK MEMORIAL HOSPITAL, INC. dba JOHN
F. KENNEDY MEMORIAL HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

LAKEWOOD REGIONAL MEDICAL CENTER,
INC. dba LAKEWOOD REGIONAL MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

LIFEMARK HOSPITALS OF FLORIDA, INC.
dba PALMETTO GENERAL HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

LOS ALAMITOS MEDICAL CENTER, INC.
dba LOS ALAMITOS MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

NSMC HOLDINGS, INC. fka TENET
HEALTHSYSTEM NORTH SHORE, INC. fka

NORTH SHORE MEDICAL CENTER, INC. dba
NORTH SHORE MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

PALM BEACH GARDENS COMMUNITY
HOSPITAL, INC. dba PALM BEACH
GARDENS MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

PLACENTIA-LINDA HOSPITAL, INC. dba
PLACENTIA LINDA HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

RESOLUTE HOSPITAL COMPANY, LLC dba
RESOLUTE BAPTIST HOSPITAL fka
RESOLUTE HEALTH
14201 Dallas Parkway
Dallas, TX 75254

SAINT FRANCIS HOSPITAL – BARTLETT,
INC. fka TENET HEALTHSYSTEM
BARTLETT, INC. dba SAINT FRANCIS
HOSPITAL – BARTLETT
14201 Dallas Parkway
Dallas, TX 75254

SAN RAMON REGIONAL MEDICAL
CENTER, LLC dba SAN RAMON REGIONAL
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

SIERRA VISTA HOSPITAL, INC. dba SIERRA
VISTA REGIONAL MEDICAL CENTER aka
TENET HEALTH CENTRAL COAST SIERRA
VISTA REGIONAL MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

SMSJ TUCSON HOLDINGS, LLC  dba ST.
JOSEPH'S HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

SMSJ TUCSON HOLDINGS, LLC dba ST.
MARY'S HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

ST. MARY'S MEDICAL CENTER, INC. fka
TENET ST. MARY'S, INC. dba ST. MARY'S
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE EAST
CAMPUS fka SIERRA PROVIDENCE EAST
MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE MEMORIAL
CAMPUS fka PROVIDENCE MEMORIAL
HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE SIERRA
CAMPUS fka SIERRA MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

TENET HOSPITALS LIMITED dba THE
HOSPITALS OF PROVIDENCE
TRANSMOUNTAIN CAMPUS
14201 Dallas Parkway
Dallas, TX 75254

TH HEALTHCARE, LTD. dba
NACOGDOCHES MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

TWIN CITIES COMMUNITY HOSPITAL, INC.
dba TWIN CITIES COMMUNITY HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
1, INC. dba ABRAZO SCOTTSDALE CAMPUS
fka PARADISE VALLEY HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
7, INC. dba SAINT VINCENT HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS ACQUISITION SUBSIDIARY NUMBER
9, INC. dba METROWEST MEDICAL CENTER
– FRAMINGHAM UNION CAMPUS
14201 Dallas Parkway
Dallas, TX 75254

VHS BROWNSVILLE HOSPITAL COMPANY,
LLC dba VALLEY BAPTIST MEDICAL
CENTER – BROWNSVILLE
14201 Dallas Parkway
Dallas, TX 75254

VHS DETROIT RECEIVING HOSPITAL, INC.
dba DETROIT RECEIVING HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS HARLINGEN HOSPITAL COMPANY,
LLC dba VALLEY BAPTIST MEDICAL
CENTER
14201 Dallas Parkway
Dallas, TX 75254

VHS HARPER-HUTZEL HOSPITAL, INC. dba
HUTZEL WOMEN'S HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS HURON VALLEY-SINAI HOSPITAL,
INC. dba HURON VALLEY-SINAI HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS OF ARROWHEAD, INC. dba ABRAZO
ARROWHEAD CAMPUS fka ARROWHEAD
HOSPITAL
14201 Dallas Parkway
Dallas, TX 75254

VHS OF PHOENIX, INC. dba ABRAZO
CENTRAL CAMPUS fka ABRAZO CENTRAL
CAMPUS
14201 Dallas Parkway
Dallas, TX 75254

VHS SAN ANTONIO PARTNERS, LLC dba
BAPTIST MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

VHS SINAI-GRACE HOSPITAL, INC. dba
SINAI-GRACE HOSPITAL

14201 Dallas Parkway
Dallas, TX 75254

WEST BOCA MEDICAL CENTER, INC. dba
WEST BOCA MEDICAL CENTER
14201 Dallas Parkway
Dallas, TX 75254

**AIKEN REGIONAL MEDICAL CENTERS,
LLC dba AIKEN REGIONAL MEDICAL
CENTERS**
302 University Parkway
Aiken, SC 29801-6302

CORNERSTONE REGIONAL HOSPITAL, LP
dba CORNERSTONE REGIONAL HOSPITAL
2302 Cornerstone Blvd
Edinburg, TX 78539-8471

DISTRICT HOSPITAL PARTNERS, L. P. dba
GEORGE WASHINGTON UNIVERSITY
HOSPITAL
900 23rd Street NW
Washington, DC 20037-2342

FORT DUNCAN MEDICAL CENTER, L.P. dba
FORT DUNCAN REGIONAL MEDICAL
CENTER
3333 N Foster Maldonado Blvd
Eagle Pass, TX 78852-5148

LANCASTER HOSPITAL CORPORATION dba
PALMDALE REGIONAL MEDICAL CENTER
38600 Medical Center Dr
Palmdale, CA 93551-4483

LAREDO REGIONAL MEDICAL CENTER,
L.P. dba DOCTORS HOSPITAL OF LAREDO
0700 Mcpherson Road
Laredo, TX 78045-6268

MANATEE MEMORIAL HOSPITAL, L.P. dba
LAKEWOOD RANCH MEDICAL CENTER
8330 Lakewood Ranch Blvd
Bradenton, FL 34202-5174

MANATEE MEMORIAL HOSPITAL, L.P. dba
MANATEE MEMORIAL HOSPITAL
206 2nd St E
Bradenton, FL 34208-1042

MCALLEN HOSPITALS, L.P. dba SOUTH
TEXAS HEALTH SYSTEM

1400 W Trenton Rd
Edinburg, TX 78539-9105

NORTHWEST TEXAS HEALTHCARE
SYSTEM, INC. dba NORTHWEST TEXAS
HEALTHCARE SYSTEM
1501S Coulter St
Amarillo, TX 79106-1770

SPARKS FAMILY HOSPITAL, INC. dba
NORTHERN NEVADA MEDICAL CENTER
2375 E Prater Way
Sparks, NV 89434-9641

SUMMERLIN HOSPITAL MEDICAL CENTER
LLC dba SUMMERLIN HOSPITAL MEDICAL
CENTER
657 Town Center Drive
Las Vegas, NV 89144-6367

TEMECULA VALLEY HOSPITAL, INC. dba
TEMECULA VALLEY HOSPITAL
31700 Temecula Parkway
Temecula, CA 92592-5896

UHS OF OKLAHOMA, LLC dba ST. MARY'S
REGIONAL MEDICAL CENTER
305 S 5th St
Enid, OK 73701-5832

UHS OF TEXOMA, INC. dba TEXOMA
MEDICAL CENTER
5016 S US Highway 75
Denison, TX 75020-4584

UHS-CORONA, INC. dba CORONA
REGIONAL MEDICAL CENTER
800 S Main Street
Corona, CA 92882-3420

UNIVERSAL HEALTH SERVICES OF
RANCHO SPRINGS, INC. dba SOUTHWEST
HEALTHCARE
25500 Medical Center Drive
Murrieta, CA 92562-5965

VALLEY HEALTH SYSTEM LLC dba
CENTENNIAL HILLS HOSPITAL MEDICAL
CENTER
6900 N Durango Dr
Las Vegas, NV 89149-4409

VALLEY HEALTH SYSTEM LLC dba DESERT
SPRINGS HOSPITAL
2075 E. Flamingo Rd
Las Vegas, NV 89119

VALLEY HEALTH SYSTEM LLC dba
HENDERSON HOSPITAL
1050 W Galleria Drive
Henderson, NV 89011-1706

VALLEY HEALTH SYSTEM LLC dba SPRING
VALLEY HOSPITAL MEDICAL CENTER
5400 S Rainbow Blvd.
Las Vegas, NV 89118-1859

VALLEY HEALTH SYSTEM LLC dba
VALLEY HOSPITAL MEDICAL CENTER
620 Shadow Lane
Las Vegas, NV 89106-4119

WELLINGTON REGIONAL MEDICAL
CENTER LLC dba WELLINGTON REGIONAL
MEDICAL CENTER
10101 Forest Hill Blvd
Wellington, FL 33414-6103

**ALAMEDA HEALTH SYSTEM dba
ALAMEDA HOSPITAL**
1411 E. 31st St
Oakland, CA 94602

ALAMEDA HEALTH SYSTEM dba
HIGHLAND HOSPITAL
1411 E. 31st St
Oakland, CA 94602

**COUNTY OF LOS ANGELES dba LAC
HARBOR UCLA MEDICAL CENTER**
1000 W. Carson Street
Torrance, CA 90502

COUNTY OF LOS ANGELES dba LAC
RANCHO LOS AMIGOS NATIONAL
REHABILITATION CENTER
7601 Imperial Highway
Downey, CA 90242

COUNTY OF LOS ANGELES dba LOS
ANGELES COUNTY OLIVE VIEW-UCLA
MEDICAL CENTER and OLIVE VIEW – UCLA
MEDICAL CENTER
- LOS ANGELES
14445 Olive View Drive

Sylmar, CA 91342

COUNTY OF LOS ANGELES dba LOS
ANGELES GENERAL MEDICAL CENTER fka
LAC+USC
2051 Marengo Street
Los Angeles, CA 90033

                                Plaintiffs,

            v.

XAVIER BECERRA, Secretary,
United States Department of Health and Human
Services,
200 Independence Ave., S.W.
Washington, DC 20201,

                                Defendant.

## COMPLAINT

The above-captioned three hundred and eighty-nine Plaintiff hospitals (collectively the "Hospitals"), by and through their undersigned attorneys, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Hospitals challenge the Secretary's unprecedented and unlawful reduction of their Medicare inpatient hospital payments for federal fiscal years ("FFY" or "FFYs") 2020, 2021, 2022, and 2023 (the "Payment Reductions") to fund increased Medicare payments for labor costs to the one-quarter of Medicare-participating acute care hospitals in the markets with the lowest wages nationwide (in full, the "Low Wage Index Redistribution").

2.      Medicare payments for inpatient hospital services are adjusted to reflect the hospital labor costs in the area where the hospital is located through application of the "wage index," which the Secretary is required by statute to update annually based on actual data. In the

FFY 2020, 2021, 2022, 2023, 2024, and 2025 Hospital Inpatient Prospective Payment System

("IPPS") Final Rules, the Secretary increased the wage index values for the lowest quartile of

Medicare-participating hospitals in a <u>non-data based</u> manner for the purported purpose of

attempting to increase the wages paid by low wage index hospitals <u>in the future</u>.  Medicare

Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the

Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year

2020 Rates, 84 Fed. Reg. 42,044, 42,326–32 (Aug. 16, 2019) ("FFY 2020 IPPS Final Rule"); as

revised by 84 Fed. Reg. 53,603 *et seq.* (Oct. 8, 2019) ("FFY 2020 IPPS Final Rule Correction

Notice"); Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care

Hospitals and the Long-Term Care Hospital Prospective Payment System and Final Policy

Changes and Fiscal Year 2021 Rates, 85 Fed. Reg. 58,432, 58,765–68 (Sept. 18, 2020) ("FFY

2021 IPPS Final Rule"), as revised by 85 Fed. Reg. 78,748 *et seq.* (Dec. 7, 2020) ("FFY 2021

IPPS Final Rule Correction Notice"); Medicare Program; Hospital Inpatient Prospective

Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective

Payment System and Policy Changes and Fiscal Year 2022 Rates, 86 Fed. Reg. 44,774, 45,178–

80 (Aug. 13, 2021) ("FFY 2022 IPPS Final Rule"); as revised by 86 Fed. Reg. 58,019 *et seq.*

(Oct. 20, 2021) ("FFY 2022 IPPS Final Rule Correction Notice"); Medicare Program; Hospital

Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care

Hospital Prospective Payment System and Policy Changes and Fiscal Year 2023 Rates, 87 Fed.

Reg. 48,780, 49,006–08 (Aug. 10, 2022) ("FFY 2023 IPPS Final Rule"); Medicare Program;

Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term

Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2024 Rates, 88

Fed. Reg. 58,640, 58,977–980 (Aug. 28, 2023) ("FFY 2024 IPPS Final Rule"); Medicare and

Medicaid Programs and the Children's Health Insurance Program; Hospital Inpatient Prospective

Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective

Payment System and Policy Changes and Fiscal Year 2025 Rates, 89 Fed. Reg. 68,986, 69,301–08 (Aug. 28, 2024) ("FFY 2025 IPPS Final Rule").[1]

3.      Hospitals have challenged the Payment Reductions since it was first finalized in FFY 2020.  In *Bridgeport Hosp. v. Becerra* ("*Bridgeport*"), this district court held the Secretary's FFY 2020 Payment Reduction to subsidize his inflation of the area wage index values for the lowest wage quartile of Medicare-participating acute care hospitals exceeded his statutory authority.  *Bridgeport Hosp. v. Becerra*, 589 F. Supp. 3d 1, 10–15 (D.D.C. 2022).  In July 2024, the D.C. Circuit affirmed the decision, holding specifically that the Medicare Act provisions on which the Secretary seeks to rely, 42 U.S.C. §§ 1395ww(d)(3)(E) and (d)(5)(I), do not grant him the authority for the Low Wage Index Redistribution.  *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 886–90 (D.C. Cir. 2024).[2]

4.      In addition to the FFY 2020 IPPS Final Rule challenged and set aside in *Bridgeport*, this case also challenges the identical substantive issues raised by the FFY 2021, 2022, and 2023 IPPS Final Rules.  For purposes of this action, the Secretary in FFYs 2020–2023 elected to fund the _inflation_ of wage index values for hospitals in markets with the lowest hospital wage levels in a budget neutral manner by _decreasing_ the IPPS payments to _all_ Medicare-participating hospitals by the percentages reflected in the table below.  The effect is a redistribution of IPPS payments from _all_ IPPS hospitals to fund an increase in wage payments to

---

[1]  While the Secretary in the FFY 2020 IPPS Final Rule indicated his intention that the Low Wage Index Redistribution would be a temporary policy effective for at least four (4) years, *see* 84 Fed. Reg. at 42,328, and while every court to have analyzed the Low Wage Index Redistribution has found it unlawful, *see infra* ¶¶ 82–89, the Secretary implemented the policy again for a fifth year in FFY 2024 with an even larger budget neutrality adjustment of 0.2598 percent.  FFY 2024 IPPS Final Rule, 88 Fed. Reg. at 59,344.  And, in his FFY 2025 IPPS Final Rule, the Secretary finalized an extension of the policy for at least three (3) more years beginning in FFY 2025, with the largest yet budget neutrality adjustment of 0.2843%.  FFY 2025 IPPS Final Rule, 89 Fed. Reg. at 69,948.
[2]  The D.C. Circuit also vacated the unlawful rule and ordered the district court to add an award of interest to its order.  *Bridgeport*, 108 F.4th at 890–91.

the quartile of hospitals in markets with the lowest hospital wage levels.  The Hospitals'
expected Payment Reductions are also included in this table:

| FFY | Payment Reduction Percentage | Approximate Expected Reduction Amount |
|---|---|---|
| 2020 | 0.2016% | $24,225,161.00 |
| 2021 | 0.2030% | $32,273,581.00 |
| 2022 | 0.1971% | $31,705,342.00 |
| 2023 | 0.1854% | $25,228,826.00 |

5.     The Low Wage Index Redistribution is contrary to the Secretary's authority under
the Medicare Act.  The Secretary asserted in the FFY 2020, 2021, 2022, and 2023 IPPS Final
Rules that he has statutory authority under 42 U.S.C. § 1395ww(d)(3)(E) to counterfactually
increase the data-driven wage index.  *See, e.g.*, 84 Fed. Reg. at 42,331 ("Because our proposal is
based on the actual wages that we expect low wage hospitals to pay, it falls within the scope of
the authority of section 1886(d)(3)(E)."); 85 Fed. Reg. at 58,766; 86 Fed. Reg. at 45,179; 87 Fed.
Reg. at 49,007–08 (referring commenters to prior discussion of policy in FFY 2020 IPPS Final
Rule, 84 Fed. Reg. at 42,326–32).  This statute requires the Secretary to adjust the labor-related
portion of IPPS payments "for area differences in hospital wage levels" through a "factor" (the
wage index) that "reflect[s] the relative hospital wage level in the geographic area of the hospital
compared to the national average hospital wage level."  42 U.S.C. § 1395ww(d)(3)(E).  The
Secretary must "update" the wage index annually "on the basis of a survey . . . of the wages and
wage-related costs of [IPPS-participating] hospitals in the United States."  *Id.*  In accordance
with this requirement, the Secretary collects wage data from every IPPS hospital to create the
annual Medicare IPPS wage index.  42 U.S.C. § 1395ww(d)(3)(E) <u>does not</u> authorize the
Secretary to alter the wage index based on anything other than the <u>actual</u> wage data collected
under subsection (d)(3)(E)(i) and, thus, does not authorize the Secretary to redistribute IPPS
payments from all hospitals to those hospitals in markets with the lowest hospital wage levels in

an attempt to <u>influence</u> hospital labor markets or otherwise.  In short, subsection (d)(3)(E) authorizes the Secretary to update the wage index, but only based on actual wage data.

6.     The Low Wage Index Redistribution is also arbitrary and capricious.  The Secretary contends that this Redistribution is necessary to address the lag in time between when hospitals increase wages and when IPPS payments are increased to reflect the higher wage costs.  *See* FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326.  This time lag, however, applies equally to all hospitals and is required by the statutory requirement for the wage index to be based on a survey of wage costs.  Moreover, the Secretary's purpose in adopting the Redistribution, *i.e.*, to provide additional funding to allow low wage index hospitals to pay higher wages, does not justify the shift in Medicare payments because (a) the Secretary is statutorily barred from attempting to influence hospital labor markets through the wage index and (b) the Secretary cannot assure that wages actually will increase because he did not require low wage index hospitals to use the additional funds to pay wages—the funds can be used for any purpose.  Further, the Secretary relied on the assertion that the Redistribution actually <u>increases</u> the accuracy of the wage index.  84 Fed. Reg. at 42,327.  But this assertion is not supported by any inaccuracy in the data concerning existing labor market conditions.  Rather, the Redistribution itself causes the wage index values for one-quarter of IPPS hospitals to be inaccurate through the Secretary's post-data adjustment based on the hospital wages that he speculates may be paid in these labor markets in the event wage index values are increased, without any supporting data and without any requirement that the increased payments resulting from the increased wage index values will be used to increase wages.

7.     The Secretary asserted in the FFY 2020, 2021, 2022, and 2023 IPPS Rulemakings that the Payment Reductions to the standardized amounts for all hospitals to pay for the counterfactually increased wage index values for one quarter of the hospitals is authorized under 42 U.S.C. § 1395ww(d)(3)(E) or, in the alternative, under his "exceptions and adjustments" authority at 42 U.S.C. § 1395ww(d)(5)(I)(i).  *See* 84 Fed. Reg. at 42,331; 85 Fed. Reg. at 58,767; 86 Fed. Reg. at 45,180; 87 Fed. Reg. at 49,007.  Neither of these provisions, however, authorize

45

the Secretary to violate Congress' mandates concerning the development and implementation of the wage index system.

8.      The Hospitals, therefore, respectfully ask this Court to vacate the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions imposed in FFYs 2020, 2021, 2022, and 2023, respectively, order the Secretary to recalculate the Hospitals' FFY 2020, 2021, 2022, and 2023 IPPS payments after removing the effect of the respective Payment Reductions, and make the additional FFY 2020, 2021, 2022, and 2023 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency action), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).

10.     Venue lies in this judicial district under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391.

## PARTIES

11.     At all times relevant to this action, the Hospitals were Medicare-participating, general acute-care hospital-providers under the Medicare program.  The Hospitals with their Medicare provider numbers are set forth in Exhibit 1 (at 35–78) for the FFY 2020 appeals, Exhibit 2 (at 23–70) for the FFY 2021 appeals, Exhibit 3 (at 28–73 and 74–83 (bracketed pagination added for ease of Court)) for the FFY 2022 appeals[3], and Exhibit 4[4] (at 18–69) for the

---

[3]  Schedules of Providers listing the Hospitals with their Medicare provider numbers for two FFY 2022 appeals were incidentally omitted by the PRRB, and two more were incomplete.  *See* Exhibit 3 at 28–73 (missing Schedules of Providers for PRRB No: 22-0524GC; AHMC Healthcare and PRRB No: 22-0531GC; John Muir Health, and incomplete Schedules of Providers for PRRB No: 22-0556GC; Prime Healthcare (missing page 2 of 3) and PRRB No: 22-0570GC; Tenet Healthcare (missing page 3 of 4)).  As such, included at the back of Exhibit 3 (at 74–83 (bracketed pagination added for ease of Court)) are complete Schedules of Providers downloaded from the PRRB's Office of Hearings Case and Document Management System for these four appeals.

[4]  The Hospitals identified in the Schedule of Providers for CommonSpirit Health FFY 2023 Area Wage Index Lowest Quartile IPPS Payment Reduction CIRP Group, PRRB Case No. 23-0625GC (at 24–29), are not included in this Complaint for FFY 2023.

FFY 2023 appeals, which contain the "Schedules of Providers" from the underlying administrative appeals. Although some of the Hospitals have been known by various names over the years, on the Schedules of Providers, the Hospitals usually are listed by their "dba" only and can be identified definitively by their Medicare provider numbers.  As shown in the Schedules of Providers, the Hospitals' fiscal years sometimes are not the same as the FFY.  One FFY may overlap with two hospital fiscal years.  If so, then only a portion of the hospital's fiscal years fall within each of the FFYs that are the subject of this lawsuit.  For example, for a hospital's fiscal year that ends on December 31, the period of FFY 2020 from October 1, 2019 through December 31, 2019, would fall within the hospital's fiscal year 2019, and the period of FFY 2020 from January 1, 2020 through September 30, 2020, would fall within the hospital's fiscal year 2020.

12.     All of the Hospitals are appealing the Payment Reductions for all included FFYs (2020–2023), except for the following hospitals that are appealing the specific years indicated below:

| Hospital Number | Hospital Name | FFYs Appealed |
|---|---|---|
| 05-0245 | Arrowhead Regional Medical Center | 2021, 2022, 2023 |
| 05-0056 | Antelope Valley Medical Center | 2021, 2022, 2023 |
| 05-0724 | Bakersfield Heart Hospital | 2021, 2022, 2023 |
| 05-0350 | Beverly Hospital | 2021, 2022, 2023 |
| 05-0782 | Casa Colina Hospital | 2021, 2022, 2023 |
| 05-0407 | Chinese Hospital | 2021, 2022, 2023 |
| 05-0122 | Dameron Hospital | 2021, 2022, 2023 |
| 05-0543 | College Hospital Costa Mesa | 2021, 2022, 2023 |
| 05-0776 | College Medical Center | 2021, 2022, 2023 |
| 05-0394 | Community Memorial Hospital San Buenaventura | 2021, 2022, 2023 |
| 05-0145 | Community Hospital of The Monterey Peninsula | 2021, 2022, 2023 |
| 05-0276 | Contra Costa Regional Medical Center | 2021, 2022, 2023 |
| 05-0573 | Eisenhower Health | 2021, 2022, 2023 |
| 05-0308 | El Camino Health | 2021, 2022, 2023 |

| Hospital Number | Hospital Name | FFYs Appealed |
|---|---|---|
| 05-0045 | El Centro Regional Medical Center | 2021, 2022, 2023 |
| 05-0039 | Enloe Medical Center | 2021, 2022, 2023 |
| 05-0257 | Good Samaritan Hospital, L.P. | 2021, 2022, 2023 |
| 05-0624 | Henry Mayo Newhall Hospital | 2021, 2022, 2023 |
| 05-0063 | Hollywood Presbyterian Medical Center | 2021, 2022, 2023 |
| 05-0057 | Kaweah Health Medical Center | 2021, 2022, 2023 |
| 05-0315 | Kern County Hospital Authority | 2021, 2022, 2023 |
| 05-0110 | Lompoc Valley Medical Center | 2021, 2022, 2023 |
| 05-0028 | Mad River Community Hospital | 2021, 2022, 2023 |
| 05-0568 | Madera Community Hospital | 2021, 2022, 2023 |
| 05-0360 | Marin General Hospital | 2021, 2022, 2023 |
| 05-0254 | Marshall Medical Center | 2021, 2022, 2023 |
| 05-0779 | Martin Luther King, Jr. Community Hospital | 2021, 2022, 2023 |
| 05-0704 | Mission Community Hospital | 2021, 2022, 2023 |
| 05-0248 | Natividad Medical Center | 2021, 2022, 2023 |
| 05-0367 | Northbay Medical Center | 2021, 2022, 2023 |
| 05-0067 | Oak Valley Hospital District | 2021, 2022, 2023 |
| 05-0030 | Oroville Hospital | 2021, 2022, 2023 |
| 05-0378 | Pacifica Hospital of The Valley | 2021, 2022, 2023 |
| 05-0342 | Pioneers Memorial Healthcare District | 2021, 2022, 2023 |
| 05-0231 | Pomona Valley Hospital Medical Center | 2021, 2022, 2023 |
| 05-0272 | Redlands Community Hospital | 2021, 2022, 2023 |
| 05-0292 | Riverside University Health System - Medical Center | 2021, 2022, 2023 |
| 05-0334 | Salinas Valley Health Medical Center | 2021, 2022, 2023 |
| 05-0099 | San Antonio Regional Hospital | 2021, 2022, 2023 |
| 05-0054 | San Gorgonio Memorial Hospital | 2021, 2022, 2023 |
| 05-0113 | San Mateo Medical Center | 2021, 2022, 2023 |
| 05-0038 | Santa Clara Valley Medical Center | 2021, 2022, 2023 |
| 05-0093 | Saint Agnes Medical Center | 2021, 2022, 2023 |
| 05-0261 | Sierra View Medical Center | 2021, 2022, 2023 |
| 05-0090 | Sonoma Valley Hospital | 2021, 2022, 2023 |
| 05-0128 | Tri-City Medical Center | 2021, 2022, 2023 |

| Hospital Number | Hospital Name | FFYs Appealed |
|---|---|---|
| 05-0126 | Valley Presbyterian Hospital | 2021, 2022, 2023 |
| 05-0159 | Ventura County Medical Center | 2021, 2022, 2023 |
| 05-0195 | Washington Hospital and Washington Hospital Healthcare System | 2021, 2022, 2023 |
| 05-0194 | Watsonville Community Hospital | 2021, 2022, 2023 |
| 05-0225 | Adventist Health Feather River | 2020 |
| 05-0289 | AHMC Seton Medical Center | 2021, 2022, 2023 |
| 05-0742 | Olympia Medical Center | 2020, 2021 |
| 14-0049 | Pipeline West Suburban Hospital Medical Center | 2022, 2023 |
| 14-0082 | Pipeline Weiss Memorial Hospital | 2022, 2023 |
| 45-0678 | White Rock Medical Center | 2022, 2023 |
| 05-0438 | Huntington Hospital | 2021, 2022, 2023 |
| 03-0024 | St. Joseph's Hospital & Medical Center | 2020, 2021, 2022 |
| 03-0036 | Chandler Regional Medical Center | 2020, 2021, 2022 |
| 03-0119 | Mercy Gilbert Medical Center | 2020, 2021, 2022 |
| 05-0017 | Mercy General Hospital | 2020, 2021, 2022 |
| 05-0036 | Bakersfield Memorial Hospital | 2020, 2021, 2022 |
| 05-0058 | Glendale Memorial Hospital & Health Center | 2020, 2021, 2022 |
| 05-0082 | St. John's Regional Medical Center | 2020, 2021, 2022 |
| 05-0084 | St Joseph's Medical Center of Stockton | 2020, 2021, 2022 |
| 05-0089 | Community Hospital of San Bernardino | 2020, 2021, 2022 |
| 05-0107 | Marian Regional Medical Center | 2020, 2021, 2022 |
| 05-0116 | Northridge Hospital Medical Center | 2020, 2021, 2022 |
| 05-0127 | Woodland Memorial Hospital | 2020, 2021, 2022 |
| 05-0129 | St. Bernardine Medical Center | 2020, 2021, 2022 |
| 05-0149 | California Hospital Medical Center LA | 2020, 2021, 2022 |
| 05-0150 | Sierra Nevada Memorial Hospital | 2020, 2021, 2022 |
| 05-0152 | Saint Francis Memorial Hospital | 2020, 2021, 2022 |
| 05-0191 | St. Mary Medical Center | 2020, 2021, 2022 |
| 05-0197 | Sequoia Hospital | 2020, 2021, 2022 |
| 05-0232 | French Hospital Medical Center | 2020, 2021, 2022 |

| Hospital Number | Hospital Name | FFYs Appealed |
|---|---|---|
| 05-0242 | Dominican Hospital | 2020, 2021, 2022 |
| 05-0280 | Mercy Medical Center Redding | 2020, 2021, 2022 |
| 05-0295 | Mercy Hospital | 2020, 2021, 2022 |
| 05-0414 | Mercy Hospital of Folsom | 2020, 2021, 2022 |
| 05-0444 | Mercy Medical Center | 2020, 2021, 2022 |
| 05-0457 | St. Mary's Medical Center | 2020, 2021, 2022 |
| 05-0516 | Mercy San Juan Medical Center | 2020, 2021, 2022 |
| 05-0590 | Methodist Hospital of Sacramento | 2020, 2021, 2022 |
| 05-0616 | St. John's Pleasant Valley Hospital | 2020, 2021, 2022 |
| 29-0012 | St. Rose Dominican Hospitals - Rose De Lima Campus | 2020, 2021, 2022 |
| 29-0045 | St. Rose Dominican Hospitals - Siena Campus | 2020, 2021, 2022 |
| 29-0053 | St. Rose Dominican Hospitals - San Martin Campus | 2020, 2021, 2022 |
| 05-0238 | USC Arcadia Hospital fka Methodist Hospital of Southern California | 2021, 2022, 2023 |
| 05-0104 | Saint Francis Medical Center | 2021, 2022, 2023 |
| 05-0205 | East Valley Glendora Hospital | 2020, 2021 |
| 45-0099 | Pampa Regional Medical Center | 2022, 2023 |
| 45-0176 | Mission Regional Medical Center | 2023 |
| 07-0012 | Rockville General Hospital | 2020, 2022 |
| 31-0083 | East Orange General Hospital | 2020, 2021 |
| 39-0081 | Delaware County Memorial Hospital | 2020, 2021, 2022 |
| 45-0040 | Covenant Medical Center | 2020, 2021, 2023 |
| 45-0162 | Grace Medical Center | 2020, 2021, 2023 |
| 45-0539 | Covenant Hospital Plainview | 2022, 2023 |
| 45-0755 | Covenant Hospital Levelland | 2022, 2023 |
| 50-0002 | Providence St. Mary Medical Center | 2022, 2023 |
| 10-0029 | North Shore Medical Center | 2020, 2021 |
| 10-0053 | Hialeah Hospital | 2020, 2021 |
| 10-0183 | Coral Gables Hospital | 2020, 2021 |
| 10-0187 | Palmetto General Hospital | 2020, 2021 |
| 42-0002 | Piedmont Medical Center | 2023 |

| Hospital Number | Hospital Name | FFYs Appealed |
|---|---|---|
| 42-0082 | Aiken Regional Medical Center | 2020, 2021, 2022 |
| 45-0643 | Doctors Hospital of Laredo | 2021, 2023 |
| 45-0825 | Cornerstone Regional Hospital | 2020 |
| 45-0092 | Fort Duncan Medical Center | 2022, 2023 |

13.     Defendant Xavier Becerra is the Secretary of the Department of Health and

Human Services, the federal department which includes the Centers for Medicare & Medicaid

Services ("CMS").  The Secretary, the federal official responsible for administration of the

Medicare program, has delegated that responsibility to CMS.

## THE MEDICARE APPEALS PROCESS

14.     If a provider is dissatisfied with a "final determination" as to the amount of its

Medicare IPPS payments, the provider may appeal to the Provider Reimbursement Review

Board ("PRRB" or the "Board") if it meets the requirements set forth in 42 U.S.C. § 1395oo(a),

including that the "amount in controversy is $10,000 or more," and "such provider files a request

for a hearing within . . . 180 days after notice of the Secretary's final determination."  42 U.S.C.

§ 1395oo(a)(1)(A)(ii), (2), (3).  A group of providers may bring such an appeal if the matter in

controversy involves a common question of fact or interpretation of law or regulations and the

amount in controversy is, in the aggregate, $50,000 or more.  42 U.S.C. § 1395oo(b).

15.     The publication of IPPS rates in the Federal Register, including the wage indices,

constitutes a "final determination" that may be appealed to the PRRB.  42 U.S.C. § 1395oo(a).

The PRRB lacks the authority to adjudicate the validity of the Secretary's regulations and CMS

Rulings.  42 C.F.R. § 405.1867.

16.     If a hospital's jurisdictionally proper appeal involves a question of law that the

PRRB is without authority to decide, the PRRB may, through its own motion or upon the request

of the hospital, grant expedited judicial review ("EJR") of the appeal in accordance with 42

U.S.C. § 1395oo(f)(1).  If EJR is granted, a hospital may seek judicial review of the final

determination without a PRRB hearing.  *Id.*

17.     Judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

## THE APA

18.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review after the PRRB orders EJR "shall be tried pursuant to the applicable provisions under chapter 7 of title 5 . . ." of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Furthermore, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

19.     Additionally, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  The APA requires that the agency provide notice of proposed rulemaking, afford interested parties an opportunity to comment on the proposed rulemaking, and consider the relevant matters presented.  *See* 5 U.S.C. § 553.

## PROCEDURAL BACKGROUND

20.     This action arises from several PRRB common issue related party ("CIRP") group appeals and non-CIRP optional group appeals challenging the Hospitals' IPPS payments for FFYs 2020, 2021, 2022, and 2023, all on the grounds that those payments were (and continue to be) improperly understated as a result of the Low Wage Index Redistribution.  Specifically, this action includes the following numbers of groups for each of the FFYs at issue:

| FFY | CIRP Group Appeals | Optional Group Appeals |
|---|---|---|

52

| 2020 | 30 | 0[5] |
|------|-----|-----|
| 2021 | 30 | 1 |
| 2022 | 30 | 1 |
| 2023 | 30 | 1 |

21.     As specified in ¶ 12, *supra*, the Hospitals appealed the Low Wage Index Redistribution in the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules by filing timely and jurisdictionally valid appeals in accordance with 42 U.S.C. § 1395oo.

22.     The Hospitals requested that the PRRB grant EJR on August 28, 2024, because, although the PRRB has jurisdiction over their appeals, the PRRB lacks the authority to review the validity of the Payment Reductions at issue.

23.     The PRRB's September 27, 2024 letter found it had jurisdiction over the Hospitals' appeals and granted these Hospitals' EJR request for FFY 2020.  A copy of this letter (hereinafter, "the FFY 2020 EJR Decision") is attached as Exhibit 1.

24.     The PRRB's September 27, 2024 letter found it had jurisdiction over the Hospitals' appeals and granted these Hospitals' EJR request for FFY 2021.  A copy of this letter (hereinafter, "the FFY 2021 EJR Decision") is attached as Exhibit 2.

25.     The PRRB's September 27, 2024 letter found it had jurisdiction over the Hospitals' appeals and granted these Hospitals' EJR request for FFY 2022.  A copy of this letter (hereinafter, "the FFY 2022 EJR Decision") is attached as Exhibit 3.

26.     The PRRB's September 27, 2024 letter found it had jurisdiction over the Hospitals' appeals and granted these Hospitals' EJR request for FFY 2023.  A copy of this letter (hereinafter, "the FFY 2023 EJR Decision") is attached as Exhibit 4.

27.     With respect to certain Hospitals in 29 of the FFY 2020 group appeals, the Medicare Contractor filed Substantive Claim Challenges regarding specific cost reporting periods.  Exhibit 1 at 7-10.  In the FFY 2020 EJR Decision, the PRRB identified the "specific

---

[5]  The hospitals in the non-CIRP optional group appeal previously challenged the Payment Reduction in the FFY 2020 IPPS Final Rule in federal court, *see Kaweah Delta Health Care District, dba Kaweah Delta Medical Center, et al. v. Becerra*, No. 2:20-cv-06564 (C.D. Cal.), *appealed*, Nos. 23-55157, 23-55209 (consolidated) (9th Cir.) ("*Kaweah Delta*").

Participants and FYEs being challenged in each case (the "Challenged Participants")" in Appendix B to the FFY 2020 EJR Decision. *Id*. at 25-34.

28.     As the Challenged Participants described in their responses to the Medicare Contractors' Substantive Claim Challenges, these Challenged Participants' cost reports were not due for multiple months after their FFY 2020 group appeals were due and filed. *See id.* at 8-10 and 14-18.  Nevertheless, the PRRB found that "the Challenged Participants failed to include 'an appropriate claim for the specific item' that is the subject of their respective group appeals as required under 42 C.F.R. § 413.24(j)(1) *except for the following three Providers,* which **_did_** include an appropriate claim:

    i       Case 20-0849GC, Northern Nevada Medical Center (Prov. No. 29-0032, FYE 12/31/2020);

    ii      Case 20-0777GC, USC Verdugo Hills Hospital (Prov. No. 05-0124, FYE 12/31/2020); and

    iii     Case 20-0782GC, Garfield Med Center (Prov. No. 05-0737, FYE 6/30/2021)"

*Id.* at 20 (emphasis in original).  For those Hospitals that the PRRB specifically found failed to include "an appropriate claim for the specific item" that is the subject of their respective group appeals, the Board granted EJR to challenge the validity of 42 C.F.R. §§ 413.24(j) and 405.1873. *Id.*

29.     With respect to certain Hospitals in only two of the 31 FFY 2021 group appeals, the Medicare Contractor filed Substantive Claim Challenges regarding specific cost reporting periods prior to the filing of the Hospitals' EJR Request.  Exhibit 2 at 8-11 (identifying PRRB Cases 21-0909GC and 21-0910GC).  In the FFY 2021 EJR Decision, the PRRB conducted the substantive claim challenge review and made findings of facts as to only those two cases.

30.     As the Hospitals in Cases 21-0909GC and 21-0910GC described in their responses to the Medicare Contractors' Substantive Claim Challenges, these Challenged Participants' cost reports were not due for multiple months after their FFY 2021 group appeals were due and filed. *See id.* at 9-11 and 15-16.  Nevertheless, the PRRB found that for Case 21-0909GC, all of the hospital participants "failed to include 'an appropriate claim for the specific

item' that is the subject of their respective group appeals as required under 42 C.F.R.

§ 413.24(j)(1) *except for the following three Providers,* which ***did*** include an appropriate claim:

> i     Doctors Medical Center of Modesto (Provider No. 05-0464, FYE 5/31/2022);
> ii    Doctors Medical Center of Manteca (Provider No. 05-0118, FYE 5/31/2022)
> iii   Desert Regional Medical Center (Provider No. 05-0243, FYE 5/31/2022)"

*Id.* at 18-19.  The PRRB found that for Case 21-0910GC, "Doctors Hospital of Laredo (Provider No. 45-0642, FYE 12/31/2020) failed to include 'an appropriate claim for the specific item' that is the subject of their respective group appeals as required under 42 C.F.R. § 413.24(j)(1)."  *Id.* For those Hospitals that the PRRB specifically found failed to include "an appropriate claim for the specific item" that is the subject of their respective group appeals, the Board granted EJR to challenge the validity of 42 C.F.R. §§ 413.24(j) and 405.1873.  *Id.*

31.     With respect to certain Hospitals in 14 of the 31 FFY 2022 group appeals, the Medicare Contractor filed Substantive Claim Challenges regarding specific cost reporting periods prior to the filing of the Hospitals' EJR Request.  Exhibit 3 at 8-10 and 24-27.  In the FFY 2022 EJR Decision, the PRRB identified the "specific Participants and FYEs being challenged in each case (the "Challenged Participants")" in Appendix B to the FFY 2022 EJR Decision.  *Id.* at 9 and 24-27.  The PRRB conducted the substantive claim challenge review and made findings of facts as to 13 of those 14 group appeals.  *Id.* at 8.  In one other case, Case 22-0572GC, the PRRB found that the Substantive Claim Challenge was untimely, and thus the PRRB declined to consider it or make any related findings of fact.  *Id.* at 16-17.

32.     As the Challenged Participants described in their responses to the Medicare Contractors' Substantive Claim Challenges, these Challenged Participants' cost reports were not due for multiple months after their FFY 2022 group appeals were due and filed.  *See id.* at 9-10 and 14-17.  Nevertheless, except for Case 22-0572GC, the PRRB found that the Challenged Participants failed to include "an appropriate claim for the specific item" that is the subject of their respective group appeals as required under 42 C.F.R. § 413.24(j)(1).  *Id.* at 19-20.  For those Hospitals that the PRRB specifically found failed to include "an appropriate claim for the

specific item" that is the subject of their respective group appeals, the Board granted EJR to challenge the validity of 42 C.F.R. §§ 413.24(j) and 405.1873.  *Id.* at 20.

33.    With respect to FFY 2023, no Substantive Claim Challenges were filed.  As the PRRB's FFY 2023 EJR Decision notes: "Accordingly, the Board is not obligated under 42 C.F.R. § 405.1873 to include findings on substantive claim challenges in these cases for any of the participants."  Exhibit 4 at 12.

34.    This action is timely filed within 60 days of the PRRB's FFY 2020, FFY 2021, FFY 2022, and FFY 2023 EJR Decisions under 42 U.S.C. § 1395oo(f).

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

35.    The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. § 1395c.  The Hospitals entered into written agreements with the Secretary to provide hospital services to Medicare-eligible individuals as "provider[s] of services" under the Medicare Act.  42 U.S.C. § 1395cc.

36.    The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  *See* 42 U.S.C. § 1395kk; Health, Education, and Welfare, Reorganization Order, 42 Fed. Reg. 13,262 (Mar. 9, 1977).

37.    The Medicare program consists of Part A, which covers inpatient hospital services and certain other institutional services; Part B, which covers physician services and certain outpatient services; Part C, which covers managed health care plans; and Part D, which provides prescription drug coverage.  Only Part A is at issue in this action.

38.    Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospitals, that have entered into written provider agreements with the Secretary, pursuant to 42 U.S.C. § 1395cc, to furnish hospital services to Medicare beneficiaries.  CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("MACs"), which are agents of the Secretary.  Each Medicare-participating hospital is assigned to a MAC.  42 U.S.C.

§ 1395h.  The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

39.    CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. § 401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, the Secretary issues other subregulatory documents to implement the Medicare program, including the IPPS, which generally do not have the force and effect of law.  The Medicare Act requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."  42 U.S.C. § 1395hh(a)(2).  Thus, the Medicare Act prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary through notice-and-comment rulemaking.

A.    **Medicare Cost Report Requirements**

40.    Each Medicare participating hospital annually files with its MAC a Medicare "cost report," based on the hospital's fiscal year end.  *See Oakland Physicians Med. Ctr. v. Azar*, 330 F. Supp. 3d 391, 394 (D.D.C. 2018) (citing 42 C.F.R. §§ 413.20(c), 413.24(f)).  Cost reports are generally due to be filed with the MAC within 5 months after the end of the hospital's fiscal year.

41.    Effective for cost reporting periods beginning January 1, 2016, CMS's regulation governing the content of cost reports states in relevant part:

> In order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report, whether determined on an as submitted, as amended, or as adjusted basis (as prescribed in paragraph (j)(3) of this section), must include an appropriate claim for the specific item, by . . .
>
> . . .
>
> Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy (for example, if the provider believes the contractor lacks the

57

> authority or discretion to award the reimbursement the provider seeks for the
> item), by following the procedures (set forth in paragraph (j)(2) of this section) for
> properly self-disallowing the specific item in the provider's cost report as a
> protested amount.

42 C.F.R. § 413.24(j)(1) (the "Self-Disallowance Regulation"). The Self-Disallowance

Regulation states that a hospital may self-disallow items of reimbursement by (1) including "an

estimated reimbursement amount for each specific self-disallowed item in the protested amount

line (or lines) of the provider's cost report" and (2) attaching "a separate work sheet to the

provider's cost report for each specific self-disallowed item, explaining why the provider self-

disallowed each specific item (instead of claiming full reimbursement in its cost report for the

specific item) and describing how the provider calculated the estimated reimbursement amount

for each specific self-disallowed item." *Id.* § 413.24(j)(2).

42.     A companion regulation to the Self-Disallowance Regulation purports to prohibit

a hospital from receiving reimbursement for any item that it did not claim in its cost report by,

for example, self-disallowing the item. *See* 42 C.F.R. § 405.1873(b) (directing the PRRB to

review a challenge to "whether the provider's cost report included an appropriate claim for the

specific item under appeal," make "specific findings of fact and conclusions of law . . . on the

question of whether the provider's cost report included an appropriate claim for the specific item

. . . ."); *id.* § 405.1873(f)(2)(ii) (stating that if the hospital's cost report "[d]id not include an

appropriate cost report claim for the specific item under appeal, the specific item is not

reimbursable").

**B.     IPPS Payment**

43.     Effective for cost reporting years beginning on or after October 1, 1983,

Congress enacted statutes requiring the Secretary to implement the IPPS to pay hospitals,

including the Hospitals, for the operating costs related to providing inpatient hospital services to

Medicare beneficiaries.

44.     Under the IPPS, Medicare payments for hospital operating costs are not based

directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined

rates that take into account the diagnosis of the patient determined at the time of discharge from

the inpatient stay, subject to certain payment adjustments.  42 U.S.C. § 1395ww(d)(1)-(5).  The IPPS relies on a national base payment rate or "standardized amount" that is adjusted for geographic factors and then multiplied by a weighting factor determined based on the patient's diagnoses.

45.     The standardized amount consists of a labor-related portion and a nonlabor-related portion.  The labor-related portion is the proportion "of hospitals' costs which are attributable to wages and wage-related costs."  42 U.S.C. § 1395ww(d)(3)(E).  The labor-related portions are 68.3% of the standardized amount for FFYs 2020 and 2021, and 67.6% of the standardized amount for FFYs 2022 and 2023.  84 Fed. Reg. at 42,619; 85 Fed. Reg. at 58,792; 86 Fed. Reg. at 45,193; 87 Fed. Reg. at 49,018.  However, Congress set the labor-related portion at 62% of the standardized amount for hospitals with a wage index less than or equal to one (1.0000), 42 U.S.C. § 1395ww(d)(3)(E)(ii).

## C.     The Area Wage Index Adjustment

46.     The Secretary is required to adjust the labor-related portion of the standardized amount "for area differences in hospital wage levels . . . ."  42 U.S.C. § 1395ww(d)(3)(E).  To do so, the Secretary must calculate "a factor . . . reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level."  42 U.S.C. § 1395ww(d)(3)(E).  This factor is known as the wage index value.

47.     The Secretary is required to update the wage index annually "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States."  42 U.S.C. § 1395ww(d)(3)(E). ("Subsection (d) hospitals" are those hospitals paid under the IPPS.)  In addition, "[n]ot less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category . . . ."  *Id.*  The Secretary sets forth wage index determinations in the annual IPPS final rule.  *See* FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,300; FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,743; FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,162; FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 48,990.  Annual

wage index updates must not increase aggregate payments and, thus are budget neutral: "Any adjustments or updates made under [42 U.S.C. § 1395ww(d)(3)(E)] for a fiscal year . . . shall be made in a manner that assures that the aggregate payments under [42 U.S.C. § 1395ww(d)] in the fiscal year are not greater or less than those that would have been made in the year without such adjustment."  42 U.S.C. § 1395ww(d)(3)(E).

48.    To implement this statute, the Secretary obtains the actual wage data used to calculate the wage index from the Medicare cost report that each Medicare-participating hospital is required to file annually.  These data are taken from the Hospital Wage Index Occupational Mix Survey, payroll records, contracts, and other wage-related documentation.  The data are reviewed and evaluated by Medicare Administrative Contractors ("MACs") in a 16 to 18 month "Hospital Wage Index Development" process in order to ensure that the data, and therefore the wage index values, are accurate.  In computing the wage index, the Secretary uses the data that result from the Hospital Wage Index Development process, determines an "average hourly wage" for each labor market area (total wage costs divided by total hours for all hospitals in the geographic area), which is compared against a national average hourly wage (total wage costs divided by total hours for all hospitals nationally).  *See* FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,305; FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,769; FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,170; FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 48,998.

**D.    The Secretary's Exceptions and Adjustments Authority**

49.    The Secretary is authorized to "provide by regulation for such other exceptions and adjustments to such payment amounts under [42 U.S.C. § 1395ww(d)] as the Secretary deems appropriate."  42 U.S.C. § 1395ww(d)(5)(I)(i).

50.    Subsection (d)(5)(I)(ii) explicitly authorizes the Secretary to make budget neutrality adjustments when he makes an "adjustment" for transfer cases.  "In making adjustments under clause (i) *for transfer cases* . . . the Secretary may make adjustments to each of the average standardized amounts determined under paragraph (3) to assure that the aggregate payments made under this subsection for such fiscal year are not greater or lesser than those that

would have otherwise been made in such fiscal year." *Id.* at § 1395ww(d)(5)(I)(ii) (emphasis added). Medicare applies a special IPPS payment methodology for transfer cases (*e.g.*, cases where patients are transferred to another acute care hospital for further care before inpatient hospital care is completed), *see* 42 C.F.R. § 412.4, and subsection (d)(5)(I)(ii) was adopted to permit the Secretary to adjust payments for transfer cases in a budget neutral manner. The statute provides no similar authority for budget neutrality adjustments where the Secretary adopts an exception or adjustment for non-transfer cases under subsection (d)(5)(I)(i).

51.     Congress has not authorized a budget neutrality adjustment for any other type of exception or adjustment adopted under subsection (d)(5)(I)(i).

## THE LOW WAGE INDEX REDISTRIBUTION IN THE FFY 2020, 2021, 2022, AND 2023 IPPS RULEMAKINGS

### A.     Proposed Low Wage Index Redistribution

52.     In the FFY 2020 IPPS Proposed Rule (the "Proposed Rule"), the Secretary stated that there is a growing disparity between low and high wage index hospitals. *See* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Proposed Policy Changes and Fiscal Year 2020 Rates, 84 Fed. Reg. 19,158, 19,393–95 (May 3, 2019). Referencing public comments received in response to a Request for Information on wage index disparities included in the FFY 2019 IPPS Proposed Rule, the Secretary in the FFY 2020 Proposed Rule asserted that, because the wage data used to create the wage index come from hospital cost reports, it "allows hospitals in States with significantly higher wage indexes to maintain and improve their favorable position in the current system by setting higher than market value wages for their employees." 84 Fed. Reg. at 19,394. The Secretary continued that "higher wage hospitals can, by virtue of higher Medicare payments, afford to pay wages that allow them to continue as a high wage index State." *Id.* Whereas, "[l]ow wage index States . . . cannot afford to pay wages that would allow their hospitals to climb back toward the median wage index[,]" which over time, the Secretary alleges, widens the gap between the high and low wage hospitals. *See id.* The Secretary,

however, did not challenge that the wage index values for higher and lower wage hospitals were based on actual wage data.

53.     In the Proposed Rule, the Secretary sought to counterfactually manipulate wage index disparities through a number of proposals, including the Low Wage Index Redistribution. As proposed, the Low Wage Index Redistribution would array the wage indices across the nation from lowest to highest, break them into quartiles, and then would implement a post-data increase of the data-driven wage index values for the hospitals in the lowest quartile by half the difference between the (a) the actual wage index value as calculated by CMS and the MAC per the Hospital Wage Index Development process and (b) the 25th percentile of wage index values.  *See* 84 Fed. Reg. at 19,394–95.[6]

54.     The Secretary proposed to implement the Low Wage Index Redistribution in a budget neutral manner through a corresponding counterfactual reduction to the wage index values of the highest quartile wage index hospitals.  84 Fed. Reg. at 19,395–96.  The Secretary maintained that this "budget neutrality adjustment" had two key merits: (a) "by compressing the wage index for hospitals on the high and low ends, that is, those hospitals with a low wage index and those hospitals with a high wage index, such a methodology increases the impact on existing wage index disparities more than by simply addressing one end," and (b) "such a methodology ensures those hospitals in the middle, that is, those hospitals whose wage index is not considered high or low, do not have their wage index values affected by this proposed policy."  *Id.* at 19,395.  In the Proposed Rule, the Secretary also discussed alternatives to the proposed budget neutrality adjustment, including "applying a budget neutrality factor to the standardized amount rather than focusing the adjustment on the wage index of high wage index hospitals."  84 Fed. Reg. at 19,672.

_____

[6]  The Proposed Rule used the following example to illustrate the proposed adjustment: "[A]ssume the otherwise applicable FY 2020 wage index value for a geographically rural hospital in Alabama is 0.6663, and the 25th percentile wage index value for FY 2020 is 0.8482. Half the difference between the otherwise applicable wage index value and the 25th percentile wage index value is 0.0910 (that is, (0.8482 – 0.6663)/2))."  *Id.* at 19,395.

**B.**     **The Low Wage Index Redistribution in the FFY 2020 IPPS Final Rule**

55.     More than 7,800 comments were submitted regarding the Proposed Rule, many of which concerned the reduction to the highest quartile wage index values to pay for the Low Wage Index Redistribution.  In the FFY 2020 IPPS Final Rule, the Secretary finalized the proposed Low Wage Index Redistribution but made some significant changes.  84 Fed. Reg. at 42,326–28.

56.     The Secretary justified adoption of the Low Wage Index Redistribution by stating that it "would provide certain low wage index hospitals with an opportunity to increase employee compensation without the usual lag in those increases being reflected in the calculation of the wage index."  *Id*. at 42,326; *see also id*. at 42,327–28 (referring on numerous occasions to providing "an opportunity for low wage index hospitals to increase" wages).  The Secretary continued that his "proposal to increase the wage index for low wage index hospitals will increase the accuracy of the wage index by appropriately reflecting the increased employee compensation that would occur (to attract and maintain a sufficient labor force) if not for the lag in the process between when a hospital increases its employee compensation and when that increase is reflected in the calculation of the wage index."  *Id*. at 42,327.  The Secretary did not provide any data or study supporting his speculation that hospitals would increase employee compensation if not for the lag.  The Secretary did not assert or provide any rationale indicating that hospitals with wage index values above the lowest quartile do not experience this "lag in the process" in the same manner as hospitals in the lowest quartile.  The Secretary explained that "this policy will be effective for at least 4 years, beginning in FY 2020, in order to allow employee compensation increases implemented by these hospitals sufficient time to be reflected in the wage index calculation."  *Id.* at 42,048.

57.     The Secretary further justified his adoption of the Low Wage Index Redistribution by asserting for the first time in the FFY 2020 IPPS Final Rule that the policy will *increase* the accuracy of the wage index.  He stated, "the intent of [the Low Wage Index Redistribution] is to increase the accuracy of the wage index as a technical adjustment, and not to use the wage index

as a policy tool to address non-wage issues related to rural hospitals, or the laudable goals of the overall financial health of hospitals in low wage areas or broader wage index reform." 84 Fed. Reg. at 42,331. The Secretary continued that, as a result of the Low Wage Index Redistribution, "the wage index for low wage index hospitals will appropriately reflect the relative hospital wage level in those areas compared to the national average hospital wage level," "[b]ecause our proposal is based on the actual wages that we expect low wage hospitals to pay . . . ." *Id.*

58.     Following significant criticism from commenters to the Low Wage Index Redistribution as proposed, the Secretary stated in the FFY 2020 IPPS Final Rule that "some commenters have presented reasonable policy arguments that we should consider further regarding the relationship between our proposed budget neutrality adjustment targeting high wage hospitals and the design of the wage index to be a relative measure of the wages and wage-related costs of [IPPS participating] hospitals in the United States." *Id.* Based on this feedback, the Secretary decided "not [to] finaliz[e] our proposal to target that budget neutrality adjustment on high wage hospitals." *See id.* Instead, the Secretary decided to implement one of the alternatives identified in the Proposed Rule and "finaliz[ed] a budget neutrality adjustment to the national standardized amount for all hospitals so that the increase in the wage index for low wage index hospitals . . . is implemented in a budget neutral manner." *Id.*

59.     Thus, in the FFY 2020 IPPS Final Rule, the Secretary decreased the standardized payment amounts of all IPPS hospitals by 0.2016% to offset the additional payments that hospitals in the lowest wage index quartile would receive under the Low Wage Index Redistribution. 84 Fed. Reg. at 42,622, *as corrected by* 84 Fed. Reg. at 53,607. The result of this budget neutrality standardized rate reduction is that all IPPS hospitals receive a 0.2016% reduction to their IPPS payments.

60.     The Secretary asserted in the FFY 2020 IPPS Final Rule that he had the authority to adopt the Low Wage Index Redistribution under the wage index statute, 42 U.S.C. § 1395ww(d)(3)(E), which he described as "giv[ing] the Secretary broad authority to adjust for area differences in hospital wage levels . . . ." 84 Fed. Reg. at 42,329. The Secretary asserted

that the Low Wage Index Redistribution "will increase the accuracy of the wage index" and therefore stated his summary disagreement with commenters' assertions that the policy (a) "disregards accurately reported wage data," and (b) "is beyond the authority granted to the agency under section [1395ww(d)(3)(E)]." *Id.* at 42,331.

61.     Although the Secretary appeared to suggest that the Low Wage Index Redistribution is also authorized under 42 U.S.C. § 1395ww(d)(5)(I), *see* 84 Fed. Reg. at 42,329 ("We stated in the proposed rule that we believe we have authority to implement our lowest quartile wage index proposal . . . and our budget neutrality proposal . . . under [subsection (d)(3)(E)] . . . , and under our exceptions and adjustments authority under [subsection (d)(5)(I)]."), this isolated suggestion, presented without explanation, is wholly unsupported by the language of subsection (d)(5)(I), which only permits exceptions and adjustments to "payment amounts" rather than exceptions or adjustments to any wage index value.

62.     With respect to the associated budget neutrality Payment Reduction for all IPPS hospitals, the Secretary asserted that he was required to implement the budget neutrality Payment Reduction under the wage index statute, 42 U.S.C. § 1395ww(d)(3)(E), but that even if not required to do so, he believes "it would be inappropriate to use the wage index to increase or decrease overall IPPS spending."  84 Fed. Reg. at 42,331.  Therefore the Secretary stated that, "if it is determined that section [1395ww(d)(3)(E)] does not require the wage index to be budget neutral, we invoke our authority at [42 U.S.C. § 1395ww(d)(5)(I)] in support of such a budget neutrality adjustment."  84 Fed. Reg. at 42,331.  This statutory provision reads as follows: "The Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts under this subsection as the Secretary deems appropriate."  42 U.S.C. § 1395ww(d)(5)(I)(i).  The Secretary paraphrased comments questioning his authority to adopt the budget neutrality adjustment under subsection (d)(5)(I) because "(1) this 'catchall' cannot be used in a manner that vitiates the language and purpose of the rest of the statute, including section [1395ww(d)(5)(A) through (H)], as there must be limits to the authority granted to CMS under this section; (2) CMS is not acting by regulation, and, therefore, is not following

[subsection (d)(5)(I)]; and (3) if CMS does have the authority to make this change, this special authority is not required to be done in a budget neutral manner, as is clear from the statute where paragraph (d)(5)(I)(ii) references budget neutrality, but paragraph (d)(5)(I)(i) does not, and as is clear from relevant case law." 84 Fed. Reg. at 42,331.  The Secretary did not substantively respond to these comments, and only offered in response his "belie[f that] we could use our broad authority under that provision to promulgate such an adjustment . . . ." *Id.*

**C.     The Low Wage Index Redistribution in the FFY 2021 Final Rule**

63.     After the adoption of the low wage index rule in FFY 2020, the Secretary continued the policy in the same manner in FFY 2021, as he had signaled in the FFY 2020 Final Rule.  In the FFY 2021 IPPS Final Rule, the Secretary reiterated his assertion that he has the authority to continue to implement this change under the area wage index statutory provision, codified at 42 U.S.C. § 1395ww(d)(3)(E).  85 Fed. Reg. at 58,766.

64.     The Secretary again elected to implement his Low Wage Index Redistribution in a budget neutral manner.  *See id.* at 58,767.  The Secretary therefore decreased the standardized payment amounts of all IPPS hospitals by 0.2030% to offset the AWI increases to those hospitals in the lowest AWI quartile.  *See* 85 Fed. Reg. at 59,034; 85 Fed. Reg. at 78,754.  The Secretary continued to assert that he has the authority to implement this budget neutrality adjustment under 42 U.S.C. § 1395ww(d)(3)(E); however, the Secretary continued to note that even if he did not have such authority under the cited area wage index statutory provision, he would invoke his special statutory "exceptions and adjustments" authority in support of such a budget neutrality adjustment.  *See* 85 Fed. Reg. at 58,767.

65.     Commenters continued to express concern about the Secretary's authority to implement this change under the area wage index statutory provision.  85 Fed. Reg. at 58,766.  The Secretary's response merely references his FFY 2020 IPPS Final Rule: "As explained in the FY 2020 IPPS/LTCH final rule (84 FR 42331), because the low wage index hospital policy is based on the actual wages that we expect low wage hospitals to pay, it falls within the scope of the authority in [42 U.S.C. § 1395ww](d)(3)(E)." *Id.*  Commenters also expressed that the policy

"fails to recognize the legitimate differences in geographic labor markets" and that "CMS is using the wage index as a policy vehicle, not as a technical correction."  In response, the Secretary expressed the belief that "the wage index for low wage index hospitals [under the policy] appropriately reflects the relative hospital wage level in those areas compared to the national average hospital wage level."  *Id.*  In particular, the Secretary  asserted that "the intent of the low wage index hospital policy is to increase the accuracy of the wage index as a technical adjustment and not to use the wage index as a policy vehicle," the policy "increases the accuracy of the wage index as a relative measure because it allows low wage index hospitals to increase their employee compensation," and that the policy "preserv[es] the rank order in wage index values."  *Id.*

66.     As in FFY 2020, the Secretary continued in FFY 2021 to describe his low wage index hospital policy as intending "to provide an *opportunity* for certain low wage index hospitals to increase employee compensation."  85 Fed. Reg. at 58,436 (emphasis added).  Commenters again expressed concern that the policy includes "no requirement for hospitals to use the increased reimbursement to boost employee compensation," and requested that "CMS begin evaluating the cost report data filed by hospitals in the lowest quartile to ascertain whether the increased funds are being used to raise employee compensation in deciding whether to continue this policy for FY 2022."  *Id.* at 58,766.  The rule finalized by the Secretary for FFY 2021, however, continues to omit any requirement regarding the use of additional funds.  Rather, the Secretary responded to commenters saying that "the future wage data from [low wage index] hospitals will help us assess our reasonable expectation that low wage hospitals would increase employee compensation as a result of our low wage index hospital policy" and that, in the future, he "intend[s] to assess whether the low wage index hospital policy has been effective" using data from the years during which the policy is in effect.  *Id.* at 58,767.

67.     With respect to the budget neutrality adjustment, many commenters urged the Secretary to adopt the policy "in a non-budget-neutral manner," arguing that the "redistribution is counterproductive to CMS's larger goals of high quality care and healthcare access because it

forces high-wage, mostly urban hospitals to bear the cost of supporting lower-wage hospitals." *Id.* Commenters also stated that the budget neutrality adjustment "penalizes many hospitals, including rural hospitals." *Id.* In response, the Secretary pointed to the budget neutrality requirement under 42 U.S.C. § 1395ww(d)(3)(E) and stated that he "would consider it inappropriate to use the wage index to increase or decrease overall IPPS spending." *Id.*

68.    Commenters also stated that the Secretary's "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) "does not authorize budget neutrality adjustments to the national standardized amount, except for transfer cases." *Id.* In response, the Secretary referenced the FFY 2020 IPPS Final Rule, stating his "belie[f] that we have broad authority under [42 U.S.C. § 1395ww(d)(5)(I)] to promulgate a budget neutrality adjustment to the standardized amount and that this authority is not limited to transfer cases." *Id.*

## D.    The Low Wage Index Redistribution in the FFY 2022 IPPS Final Rule

69.    In the FFY 2022 IPPS Final Rule, the Secretary again reiterated his assertion that he has the authority to continue to implement this change under the area wage index statutory provision, codified at 42 U.S.C. § 1395ww(d)(3)(E). 86 Fed. Reg. at 45,179. The Secretary again elected to implement his Low Wage Index Redistribution in a budget neutral manner. *See id.* at 45,531–32. The Secretary therefore decreased the standardized payment amounts of all IPPS hospitals by 0.1971% to offset the AWI increases to those hospitals in the lowest AWI quartile. *See id.* at 45,532; 86 Fed. Reg. at 58,025. The Secretary continued to assert that he has the authority to implement this budget neutrality adjustment under 42 U.S.C. § 1395ww(d)(3)(E); however, the Secretary continued to note that even if he did not have such authority under the cited area wage index statutory provision, he would invoke his special statutory "exceptions and adjustments" authority in support of such a budget neutrality adjustment. *See* 86 Fed. Reg. at 45,180.

70.    Commenters continued to express concern about the Secretary's authority to implement this change under the under the area wage index statutory provision. 86 Fed. Reg. at 45,179-80. However, with respect to his authority, the Secretary again repeated what he said in

the FFY 2020 and 2021 IPPS Final Rules.  *Id.* at 45,179 ("As explained in the FY 2020 IPPS/LTCH final rule (84 FR 42331), because the low wage index hospital policy results in a wage index that is based on the actual wage data we collect from hospitals, it falls within the scope of the authority in [42 U.S.C. § 1395ww(d)(3)(E)], which requires that the wage index be constructed 'on the basis of' that data.").  Commenters also explained that the policy "fails to recognize legitimate differences in geographic labor markets." *Id.* at 45,178.  In response, the Secretary expressed the belief that "by preserving rank order in wage index values, our policy continues to reflect meaningful distinctions between the employee compensation costs faced by hospitals in different geographic areas," and his belief that "the wage index for low wage index hospitals [under the policy] appropriately reflects the relative hospital wage level in those areas compared to the national average hospital wage level." *Id.* at 45,179.  In particular, the Secretary asserted that the policy "increases the accuracy of the wage index as a relative measure of wages across different geographic regions because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation adjustments in the wage index." *Id.*

71.    In December 2020, the HHS Office of the Inspector General ("OIG") issued a report[7] highlighting the Secretary's failure to focus the low wage index hospital policy on hospitals that may face barriers to increasing wages (*i.e.*, those with low or negative profit margins rather than higher, positive profit margins).  OIG, HHS OIG Data Brief, A-01-20-00502, at 3 (Dec. 2020), *available at* https://oig.hhs.gov/oas/reports/region1/12000502.pdf.  The OIG report shows that among 783 hospitals with area wage index values in the lowest quartile, 444 (over half) had *positive* profit margins. *Id.* at 10-11.  The OIG identified a number of factors

---

[7] The report was the result of an audit by OIG's Office of Audit Services ("OAS").  The OAS "conducts independent audits of HHS programs . . . and provide[s] independent assessment of HHS programs and operations."  OIG, Office of Audit Services, *available at* https://oig.hhs.gov/about-oig/office-audit-services/.  OAS audits "help reduce waste, abuse, and mismanagement and promote economy and efficiency throughout HHS." *Id.*

associated with low wage index values that were not considered by the Secretary, including whether a state expanded Medicaid (wider availability of coverage depresses uncompensated care) and the state's minimum wage.  *Id.* at 9-10.  The report also emphasized profit margin variability among bottom quartile hospitals (a range of profitability between -133 percent and 47 percent, with the majority of low wage index hospitals showing positive profit margins), which the Secretary failed to explore or address.  *Id.* at 11.  The OIG report also states in response to the Secretary's "data lag" rationale, "that all hospitals participating in the IPPS . . . are subject to circularity plus the 4-year time lag, including those with the highest wage indexes."  *Id.* at 13.

72.    Commenters pointed to the OIG report, arguing that the wage index policy "is mis-targeted and ineffective," and a commenter requested that the Secretary repeal the policy "while it pursues OIG's recommendation" for further study of wage index issues.  86 Fed. Reg. at 45,179.  In response, the Secretary indicated that comments supporting the policy "indicate that many low wage hospitals are indeed helped by this policy."  *Id.*  The Secretary expressed concern that targeting the policy—based on the factors identified in the OIG report or otherwise—"would not maintain the rank order in wage index values" and stated that he "believe[s] it is reasonable to conclude that our current policy will have the intended effect of providing the opportunity for low wage hospitals to increase compensation."  *Id.*  With respect to the OIG's conclusion that factors other than Medicare payment contribute to hospitals' wages, the Secretary stated that "Medicare payment is a contributing factor to hospital wage levels that is within the purview of CMS."  *Id.*  The Secretary noted that the prior years of the policy were "already promulgated . . . by the time of the OIG report" and that he "concluded that the problem needed addressing now" rather than further study.  *Id.*  Overall, the Secretary concluded that "while the OIG report indicates that there may be ways to refine our policy, it does not show that our current policy approach is unreasonable or suggest the policy goal we are hoping to achieve is unworthy."  *Id.*  Thus, despite the OIG report, the Secretary "continue[d] to believe it is appropriate to keep this policy in place while we evaluate its effectiveness."  *Id.*; *see also id.* at 45,180 ("We agree with the OIG that the issue deserves more study, and we will continue to

engage in that, but we believe the best course was to implement our policy while we engage in that study.")

73.     With respect to the budget neutrality adjustment, many commenters urged the Secretary to adopt the policy "in a non-budget-neutral manner," arguing that the "redistribution forces high-wage, mostly urban hospitals to bear the cost of supporting lower-wage hospitals." *Id*. at 45,180.  Commenters also stated that "the budget neutrality adjustment penalizes many hospitals, including rural hospitals."  *Id.*  In response, the Secretary first pointed to the budget neutrality requirement under 42 U.S.C. § 1395ww(d)(3)(E), and then stated that "even if the wage index were not required to be budget neutral under [42 U.S.C. § 1395ww(d)(3)(E)], we would consider it inappropriate to use the wage index to increase or decrease overall IPPS spending."  *Id.*

74.     Commenters also stated that the Secretary's "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) "does not authorize budget neutrality adjustments to the national standardized amount, except for transfer cases."  *Id.*  In response, the Secretary referenced the FFY 2020 and 2021 IPPS Final Rules, stating his "belie[f] that we have broad authority under [42 U.S.C. § 1395ww(d)(5)(I)] to promulgate a budget neutrality adjustment to the national standardized amount and that this authority is not limited to transfer cases."  *Id.*

**E.      The Low Wage Index Redistribution in the FFY 2023 IPPS Final Rule**

75.     After the adoption of the Low Wage Index Redistribution in FFY 2020 and subsequent continuations of the policy in FFYs 2021 and 2022, the Secretary continued the policy in the same manner in FFY 2023.  In the FFY 2023 IPPS Final Rule, the Secretary once more reiterated his assertion that he has the authority to continue to implement this change under the area wage index statutory provision, codified at 42 U.S.C. § 1395ww(d)(3)(E).  *See* 87 Fed. Reg. at 49,007–08 (Secretary referring commenters to his prior discussion of his authority for the policy in the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–32).

76.     And the Secretary once again elected to implement his Low Wage Index Redistribution in a budget neutral manner.  *See* 87 Fed. Reg. at 49,007–08.  The Secretary

therefore decreased the standardized payment amounts of all IPPS hospitals by 0.1854% to offset the AWI increases to those hospitals in the lowest AWI quartile.  *See* 87 Fed. Reg. at 49,418.  As in past years, the Secretary continued to assert that he has the authority to implement this budget neutrality adjustment under 42 U.S.C. § 1395ww(d)(3)(E); however, the Secretary continued to note that even if he did not have such authority under the cited area wage index statutory provision, he would invoke his special statutory "exceptions and adjustments" authority in support of such a budget neutrality adjustment.  *See* 87 Fed. Reg. at 49,007.

77.     Commenters again expressed concern about the Secretary's authority to implement this change under the area wage index statutory provision.  87 Fed. Reg. at 49,007.  The Secretary's response merely references his FFY 2020 IPPS Final Rule: "In response to comments stating the policy exceeds CMS's statutory authority, we refer the commenters to our prior discussion of the authority for the policy in the FY 2020 IPPS/LTCH PPS final rule (84 FR 42326 through 42332)."  *Id.*

78.     Commenters further expressed that the policy "undermines the intent of the wage index by not recognizing real differences in labor costs."  *Id.*  In response, the Secretary primarily referred back to his responses in the FFY 2020 IPPS Final Rule and expressed the belief that "the wage index for low wage index hospitals [under the policy] appropriately reflects the relative hospital wage level in those areas compared to the national average hospital wage level."  *Id.*  In particular, the Secretary asserted that the policy "preserv[es] the rank order in wage index values," and thus "continues to reflect meaningful distinctions between the employee compensation costs faced by hospitals in different geographic areas."  *Id.*  The Secretary did not acknowledge the OIG Report regarding the deficiencies of the policy, *see* ¶¶ 71-72, *supra*, nor respond to comments that yet again brought the Report's findings to his attention, strongly encouraging the Secretary not to finalize the policy in FFY 2023.[8]

---

[8]  *See, e.g.*, Public Comment by California Hospital Association re: CMS-1771-P, FFY 2023 IPPS Proposed Rule (June 17, 2022), at 12–13, available at:  https://calhospital.org/wp-

79.      Commenters also expressed that the policy is "inappropriately redistributive [and] ineffective," and that it fails to achieve its goal of helping rural hospitals as "rural hospitals in certain states do not benefit from this policy." 87 Fed. Reg. at 49,007.  In response, the Secretary cited comments from hospitals suggesting that the increased payments allowed them to raise compensation for their workers.  *Id.*  However, as the Secretary also indicated, commenters conceded that even with the increased payments, they failed to raise their compensation to keep up with inflation, indicating the policy's failure to achieve its stated goal of mitigating wage index disparities.  *Id.* at 49,006 ("[T]hese commenters stated that the national average hourly wage increased at an even higher rate due to COVID-19 . . . .").  Yet, just as in prior years, the rule finalized by the Secretary for FFY 2023 continues to omit any requirement regarding the use of additional funds, and as such, does nothing more than speculate that hospitals will use the additional funds to increase wages sufficiently to mitigate wage index disparities.

80.      With respect to the budget neutrality adjustment, many commenters again urged the Secretary to adopt the policy "in a non-budget-neutral manner," arguing that the "policy with a budget neutrality adjustment merely shifts funds from one group to another." *Id.* at 49,006–07.  Commenters also stated that, for some hospitals between the 22nd and 25th wage index percentile, "the reduction due to the budget neutrality adjustment is greater than the benefit received from the quartile adjustment." *Id.* at 49,007.  Commenters urged the Secretary to "consider wage index reforms that lift low wage hospitals' wage indexes without reducing the standardized operating rate for all hospitals," which, as commenters indicated, "already receive Medicare reimbursement at rates that are less than the actual cost of care." *Id.*  Commenters recommended a variety of alternative methodologies, including "working with Congress to create a new designated pool of funding," "working with Congress to minimize wage index cliffs," and "shortening the lag in hospital wage data used to construct the wage index." *Id.*  In

content/uploads/2022/06/CHA-Comments-FFY-2023-IPPS-Proposed-Rule-Comment-Letter-061722-Final.pdf.

response, the Secretary pointed to the budget neutrality requirement under 42 U.S.C.
§ 1395ww(d)(3)(E) and stated that he "would consider it inappropriate to use the wage index to
increase or decrease overall IPPS spending." *Id.* He reasoned that "the wage index is not a
policy tool but rather a technical adjustment designed to be a relative measure of the wages and
wage-related costs of subsection (d) hospitals," and accordingly, that he would invoke his
authority at 42 U.S.C. § 1395ww(d)(5)(I) in support of the budget neutrality adjustment "if it
were determined that section [1395ww(d)(3)(E)] of the Act does not require the wage index to be
budget neutral." *Id.*

81. Commenters also urged the Secretary not to finalize the policy for FFY 2023
and/or to eliminate the budget neutrality adjustments for FFYs 2020–2022 in light of the ruling
in *Bridgeport*, which as the Secretary acknowledged held that he did not have authority under 42
U.S.C. § 1395ww(d)(3)(E) or § 1395ww(d)(5)(I) to adopt the policy and related budget
neutrality adjustment. *Id.* at 49,006–07. In response, the Secretary noted that he "disagree[s]
with the district court's conclusion that the Social Security Act does not authorize the Secretary
to adopt the low wage index hospital policy," further noting that the *Bridgeport* decision only
regarded FY 2020 and was subject to appeal. *Id.* at 49,008.

**F.   Litigation Regarding the Low Wage Index Redistribution**

82. Cases are currently pending in this and other courts that challenge the Low Wage
Index Redistribution as enacted in FFYs 2020, 2021, 2022, 2023, and 2024. Every district court
that has ruled on the Low Wage Index Redistribution has found it to be contrary to the statutory
text of the Medicare Act and accordingly unlawful. And on July 23, 2024, the first Circuit Court
to hear a case on the issue, the United States Court of Appeals for the District of Columbia
Circuit, affirmed that the Low Wage Index Redistribution violates the text of subsections
(d)(3)(E) and (d)(5)(I). *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 886–90 (D.C. Cir. 2024).

83. In *Bridgeport*, this Court initially granted in part the plaintiff-hospitals' motion
for summary judgment and held as unlawful the same substantive issue challenged in this
Complaint (*i.e.*, the Secretary's Payment Reduction in the FFY 2020 IPPS Final Rule to

subsidize his inflation of the "wage index" for Medicare-participating acute care hospitals in the lowest quartile of wages nationwide).

84.    This Court held on March 2, 2022, that the Low Wage Index Redistribution was contrary to the statutory text. *Bridgeport Hosp. v. Becerra*, 589 F. Supp. 3d 1, 10–15 (D.D.C. 2022).  As discussed in ¶¶ 82–89, *infra*, the District Court concluded that the Secretary exceeded his "statutory authority when it altered the wage index for hospitals in the bottom quartile, such that those hospitals' wage index values were neither based on survey data nor rough approximations of the relative hospital wage levels" "in the geographic area of [low wage index] hospital[s] compared to the national average hospital wage level,' as required by 42 U.S.C. § 1395ww(d)(3)(E)(i))." *Id.* at 11, 15.  The Court further concluded that the policy exceeded the Secretary's authority under 42 U.S.C. § 1395ww(d)(5)(I)(i).  *Id.* at 13–15.

85.    The Court remanded the matter to the Secretary for further proceedings consistent with the court's March 2, 2022 Memorandum Opinion and Order.  *Bridgeport Hosp. v. Becerra*, No. 1:20-CV-01574, 2022 WL 4487114, at *3–*4 (D.D.C. July 27, 2022).

86.    Subsequently, the Secretary appealed, and the Hospitals cross-appealed, the decision in *Bridgeport*.  On July 23, 2024, the D.C. Circuit Court affirmed that the Redistribution was unlawful under both 42 U.S.C. § 1395ww(d)(3)(E) and § 1395ww(d)(5)(I).  The Court first concluded that the Low Wage Index Redistribution violates the text of subsection (d)(3)(E), as it "distorts the uniform factor, jettisons the definite, objective data, and departs from the actual disparities between regional and national wages . . . in spite of a mandatory duty to follow the formula Congress chose." *Bridgeport*, 108 F. 4th at 888.  The D.C. Circuit then held that subsection (d)(5)(I) cannot save the Redistribution, which exceeds the limits of the Secretary's "exceptions and adjustments" authority.  *Id.* at 888–90.  The D.C. Circuit vacated the policy, reasoning "an agency can't 'cure' the fact that it lacks authority to take a certain action," and ordered the district court to add an award of interest, noting that "it does not matter whether back-payments have been calculated.  *Id*. at 890–91.

87.     A similar case, *Kaweah Delta Health Care District, dba Kaweah Delta Medical Center, et al. v. Becerra* ("*Kaweah Delta*"), was filed by hospitals in the Central District of California.[9]  In a December 22, 2022 order, the district court in *Kaweah Delta* similarly granted in part hospitals' motion for summary judgment, holding unlawful under both § 1395ww(d)(3)(E) and § 1395ww(d)(5)(I) the Secretary's Payment Reduction in the FFY 2020 IPPS Final Rule to subsidize his inflation of the FFY 2020 area wage index for Medicare-participating acute care hospitals in the lowest quartile of wages nationwide and remanding the case to the Secretary.  *Kaweah Delta,* No. 2:20-cv-06564, 2022 WL 18278175, at *13 (C.D. Cal. Dec. 22, 2022).

88.     The Secretary appealed and the hospitals cross-appealed the *Kaweah Delta* order to the United States Court of Appeals for the Ninth Circuit.  The parties' briefing has concluded and oral argument was held on February 16, 2024, before the United States Court of Appeals for the Ninth Circuit.  *See Kaweah Delta Health Care District, dba Kaweah Delta Medical Center, et al. v. Becerra*, Nos. 23-55157, 23-55209 (consolidated) (9th Cir.).

89.     In addition to the lead FFY 2020 cases on this issue, other cases are currently pending in this Court challenging the FFY 2020, 2021, 2022, 2023, and 2024 iterations of the policy.  *See Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No. 1:22-cv-02904 (D.D.C.) ("*Galen I*") (challenging FFY 2020); *Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No. 1:22-cv-03085 (D.D.C.) ("*Galen II*") (challenging FFYs 2021 and 2022); *Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No. 1:24-cv-00060 (D.D.C.) ("*Galen III*") (challenging FFY 2023); *Galen Hospital Alaska, Inc. dba Alaska Regional Hospital, et al. v. Becerra*, No. 1:24-cv-02483 (D.D.C.) ("*Galen IV*") (challenging FFY 2024).  Each of these cases remains stayed and held in abeyance in this Court, pending the final disposition of *Bridgeport*.

---

[9]  The *Kaweah Delta* hospitals are plaintiffs in this case also, and here they bring claims only for FFYs 2021–2023.

**THE LOW WAGE INDEX REDISTRIBUTION VIOLATES THE MEDICARE ACT**

90.    The Low Wage Index Redistribution in the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules is invalid on several grounds, including, but not limited to, that it exceeds statutory authority, contradicts the wage index congressional mandate, was developed in an arbitrary and capricious manner, lacks support from substantial evidence, and is otherwise defective both procedurally and substantively.  *See Bridgeport*, 589 F. Supp. 3d at 15 (holding the Secretary exceeded his "statutory authority when it altered the wage index for hospitals in the bottom quartile, such that those hospitals' wage index values were neither based on survey data nor rough approximations of the relative hospital wage levels"); *Bridgeport*, 108 F.4th at 886–90 (affirming same).

A.    **The Low Wage Index Redistribution Is Beyond CMS's Authority under 42 U.S.C. § 1395ww(d)(3)(E)**

   *(1)    The Secretary's Redistribution Is Contrary to the Plain Language of 42 U.S.C. § 1395ww(d)(3)(E)*

91.    In finalizing the Low Wage Index Redistribution, the Secretary asserted that he has the legal authority under 42 U.S.C. § 1395ww(d)(3)(E) to increase the wage index values for hospitals in the lowest quartile above the values that were calculated based on actual wage data. *See* 84 Fed. Reg. at 42,329; 85 Fed. Reg. at 58,767; 86 Fed. Reg. at 45,179; 87 Fed. Reg. at 49,007–08.  Subsection (d)(3)(E) provides a process for adjusting hospital payments to account "for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level," requires that factor to be updated annually "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of [IPPS-participating] hospitals in the United States," and requires those adjustments to be budget neutral.  Subsection (d)(3)(E)(i) is designed exclusively to capture "area differences in hospital wage levels" that actually exist in the marketplace and adjust the labor-related share of the IPPS payment based on these observed differences.  Nothing in subsection (d)(3)(E) or any other provision of the Medicare Act permits the Secretary to alter payment in order to *influence*

*and skew the wage market* by altering the wage index for a subset of hospitals.  *See Bridgeport*, 589 F. Supp. 3d at 11 (holding that § 1395ww(d)(3)(E) does not give the Secretary the "authority to adjust upward the wage index values of only those hospitals in the bottom quartile in a manner that does *not* 'reflect[] the relative hospital wage level in the geographic area of [low wage index] hospital[s] compared to the national average hospital wage level,' as required by 42 U.S.C. § 1395ww(d)(3)(E)(i)).") (alterations in original).  The Low Wage Index Redistribution violates 42 U.S.C. § 1395ww(d)(3)(E) by altering wage index values for the lowest quartile so that they are not based on actual data.  *See Bridgeport*, 108 F.4th at 888 (the Low Wage Index Redistribution "distorts the uniform factor, jettisons the definite, objective data, and departs from the actual disparities between regional and national wages . . . in spite of a mandatory duty to follow the formula Congress chose.").

92.     The Low Wage Index Redistribution is contrary to the plain language of the statute because it adjusts IPPS payment rates in a way that does not reflect the actual difference between the relative hospital wage levels in a geographic area compared to the national average. *Bridgeport*, 108 F.4th at 887 ("By using the definite article 'the' before 'relative hospital wage level' and 'national average hospital wage level,' Congress specified that each of these metrics has a single, definite, discernable value. So the wage-index factor must 'reflect' the calculated difference in two objective, discernable numbers.") (internal citations omitted).  Indeed, the Low Wage Index Redistribution is designed to do the opposite by counterfactually inflating wage index values for a quarter of IPPS hospitals.  The Secretary acknowledges this in the FFY 2020 IPPS Final Rule, when he states that the Redistribution "is based on the actual wages we expect low wage hospitals to pay," 84 Fed. Reg. at 42,331 (emphasis added), rather than the actual wages paid by these hospitals.

93.     The Secretary has instituted the Hospital Wage Index Development process with detailed instructions to ensure that CMS has accurate wage index data from all IPPS hospitals with which to create the annual wage index.  CMS has invested significant resources in this process including by paying MACs to review the wage data from the Medicare cost report every

year and paying for secondary auditor oversight to ensure that the data are reliable and valid. The Secretary violated his own rules by adopting the Low Wage Index Redistribution, which improperly increased the wage index for 25% of IPPS hospitals without any wage data to support the increase.

94.     The Secretary in the FFY 2020–2023 IPPS Final Rules does not explain why or how § 1395ww(d)(3)(E) gives him broad authority to institute the Low Wage Index Redistribution, which creates wage index values for a quarter of the nation's hospitals that are not based on evidence and are, in fact, contrary to the evidence.  Rather, the wage index statute requires the Secretary to adjust IPPS payments by a factor "reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level" and is permitted to update this factor based only on "a survey . . . of the wages and wage-related costs" of IPPS hospitals in the United States.  42 U.S.C. § 1395ww(d)(3)(E).  *See Bridgeport*, 108 F.4th at 887 ("we conclude that the wage-index provision imposes (1) a mandatory duty on HHS to make the annual wage adjustment, (2) based on a uniform factor (3) comprised of definite, objective data, (4) drawn from a survey of each hospital's wages and reflecting the disparities between regional and national wages. And that simply is not what HHS has done here."); *see also Bridgeport*, 589 F. Supp. 3d at 11 ("[N]othing in the statute suggests that Congress intended to give the agency the authority to adjust upward the wage index values of only those hospitals in the bottom quartile in a manner that does *not* 'reflect[] the relative hospital wage level in the geographic area of [low wage index] hospital[s] compared to the national average hospital wage level.'") (quoting 42 U.S.C. § 1395ww(d)(3)(E)(i)) (alterations in the original).

95.     In the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules, the Secretary states, but does not explain why, "our proposal to increase the wage index for low wage index hospitals increases the accuracy of the wage index as a relative measure because it will allow low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation adjustments in the wage index."  84 Fed. Reg. at 42,331;

85 Fed. Reg. at 58,766; 86 Fed. Reg. at 45,179; *see also* 87 Fed. Reg. at 49,007 (referencing the FFY 2020 IPPS Final Rule on this point).  The Secretary did not assert that hospitals with wage index values above the lowest quartile do not experience this "lag in the process" in the same manner as hospitals in the lowest quartile.  Indeed, when commenters pointed out that the lag between any changes in employee compensation relative to the national average applies to <u>all</u> IPPS hospitals, whether they are low- or high-wage hospitals, the Secretary concurred: "In response to the commenters asserting that the data lag applies equally to all hospitals, <u>we agree that the 4 year data lag does not apply only to hospitals in the lowest quartile</u>; however, we believe that circularity inherent in the data lag poses a particular problem for low wage hospitals."  *See* FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,767 (emphasis added).  There is no reason to believe that this phenomenon disproportionately impacts the lowest quartile of hospitals and, in fact, the lag might help low-wage hospitals in labor markets with falling hospital wages avoid being assigned even lower wage index values.  Moreover, Congress only authorized the Secretary under 42 U.S.C. § 1395ww(d)(3)(E) to consider survey data in updating the wage index, and therefore when adjusting payments to hospitals to account for geographic wage differences, the Medicare Act confines the Secretary to consideration of actual wage costs and not concerns for "data lag" or any other policy concerns.  Accordingly, the Secretary considered factors that Congress did not intend him to consider in promulgating the Low Wage Index Redistribution, in that the Secretary based the policy on the data lag and his speculation that hospitals in low wage areas would increase their wages if their wage indices were increased, rather than basing it on the survey data.  *Bridgeport*, 108 F.4th at 887 ("[T]he annual adjustment to the wage-index factor must be anchored to the survey of wages, and not to other policy factors that would abandon or supplant the data-driven metric prescribed by Congress.").

96.     The Secretary "is required to calculate 'the' relative wage levels of different geographic regions as compared to 'the' national average hospital wage level."  *Bridgeport*, 589 F. Supp. 3d at 11; *see also Bridgeport*, 108 F.4th at 887 ("By using the definite article 'the' before 'relative hospital wage level' and 'national average hospital wage level,' Congress

specified that each of these metrics has a single, definite, discernable value. So the wage-index factor must 'reflect' the calculated difference in two objective, discernable numbers.") (internal quotations omitted).  Moreover, "Congress's other 'use[s] of the singular—"the proportion" and "a factor"—indicate[] that the wage index must be uniformly determined and applied.'" *Bridgeport*, 589 F. Supp. 3d at 11 (quoting *Atrium Med. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 766 F.3d 560, 569 (6th Cir. 2014)).  Thus, the Secretary exceeded his authority when he "altered the wage index for hospitals in the bottom quartile, such that those hospitals' wage index values were neither based on survey data nor rough approximations of the relative hospital wage levels."  *Id.* at 15; *see also Bridgeport*, 108 F.4th at 888 (the Low Wage Index Redistribution "distorts the uniform factor, jettisons the definite, objective data, and departs from the actual disparities between regional and national wages . . . in spite of a mandatory duty to follow the formula Congress chose.").

> (2)    *The Secretary's Redistribution Contradicts Congressional Purpose*

97.    Congress instructed the Secretary in § 1395ww(d)(3)(E) to identify actual differences in geographic labor costs relative to the national average and to account for them in the payments to hospitals, subject only to limited statutory exceptions adopted by Congress. Over time, Congress has amended § 1395ww(d)(3)(E) to (a) add a budget neutrality adjustment as part of subsection (d)(3)(E)(i); (b)  fix the wage-related portion of the standardized amount at 62% where the wage index value is less than or equal to 1.0 in subsection (d)(3)(E)(ii); (c) impose a wage index "floor" for frontier hospitals in subsection (d)(3)(E)(iii); and (d) impose a wage index "floor" for hospitals in all-urban States in subsection (d)(3)(E)(iv).  In adopting subsection (d)(3)(E)(ii) in particular, Congress already has sought to temper the impact of the wage index on low wage index hospitals by reducing the labor-related portion of the standardized amount from 68.3% in FFYs 2020–2021 (*see* 84 Fed. Reg. at 42,619; 85 Fed. Reg. at 58,792) and 67.6% in FFYs 2022–2023 (*see* 86 Fed. Reg. at 45,193; 87 Fed. Reg. at 49,018) to 62% for hospitals with a wage index value of less than the median (1.0).  Congress, however, did not authorize the Secretary to take any further steps to mitigate the impact of the wage index on

low wage index hospitals.  Rather, Congress instructed that all updates to the wage index must be based on actual wage data.  *See Bridgeport*, 589 F. Supp. 3d at 15 ("HHS must use wage data to calculate the relative hospital wage levels of particular geographic regions as compared to the national average…"); *Bridgeport*, 108 F.4th at 887 ("[T]he annual adjustment to the wage-index factor must be anchored to the survey of wages, and not to other policy factors that would abandon or supplant the data-driven metric prescribed by Congress.").  Moreover, when Congress established limited wage index exceptions in subsections (d)(3)(E)(ii), (d)(3)(E)(iii), and (d)(3)(E)(iv), it ensured that these policies would not be funded with budget neutrality payment reductions by providing that the Secretary "shall apply" the budget neutrality provision of subsection (d)(3)(E)(i) as if clauses (ii), (iii), and (iv) "had not been enacted."  42 U.S.C. § 1395ww(d)(3)(E)(i).  In other words, Congress has reserved for itself the power to adopt exceptions to the data-driven wage index process and has only exercised this power in a non-budget neutral manner that ensures that hospitals do not pay for these exceptions through payment reductions.

98.     The Secretary has acted consistently with Congress' directives in the past by calculating the wage index based on actual wage data, subject only to those modifications specifically permitted by Congress.  Congress has not authorized the Secretary to adjust the wage index based on anything other than the actual area differences in hospital wage data, and it certainly has not authorized the Secretary to adopt a budget neutrality payment adjustment to fund the counterfactual inflation of wage index values.  Thus, the Secretary's Low Wage Index Redistribution contradicts the will of Congress.

### *(3)     The Secretary's Redistribution Is* Ultra Vires

99.     Subsection (d)(3)(E) illustrates that Congress writes rules and exceptions.  In § 1395ww(d)(3)(E), Congress did both, establishing the basic requirement that the wage index must be based on actual wage data in clause (i), and adopting narrow exceptions in clauses (ii), (iii), and (iv).  These are the only exceptions that Congress made to the data-driven wage index policy required under clause (i).  Congress did not grant the Secretary the authority to institute

the Low Wage Index Redistribution or craft any policy (whether disguised as a "technical adjustment," *see, e.g.*, 84 Fed. Reg. at 42,331; 85 Fed. Reg. at 58,766; 87 Fed. Reg. 49,007, or not) to adjust the wage index.  Because the Secretary is not authorized to adjust wage index values in the absence of supporting wage data, a budget neutrality payment reduction associated with any such adjustment is likewise not authorized under § 1395ww(d)(3)(E).  As such, the Low Wage Index Redistribution is *ultra vires.*

**B.**    **The FFY 2020–2023 Payment Reductions Are Beyond CMS's Legal Authority under 42 U.S.C. § 1395ww(d)(5)(I)**

    *(1)    Section 1395ww(d)(5)(I)(i) Does Not Create a Broad Exception Allowing for the Payment Reductions*

    100.    The Secretary stated that even if he did not have the authority under § 1395ww(d)(3)(E) to implement the Payment Reductions, he would invoke his special statutory "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to do so.  *See* 84 Fed. Reg. at 42,329; 85 Fed. Reg. at 58,767; 86 Fed. Reg. at 45,180; 87 Fed. Reg. at 49,007. Subparagraph (i) of this provision states "The Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts under this subsection as the Secretary deems appropriate."

    101.    The use of 42 U.S.C. § 1395ww(d)(5)(I)(i) for a global rate reduction does not fit within the language, structure, or intent of the statute.  *See Bridgeport*, 589 F. Supp. 3d at 13–15 (holding that the Low Wage Index Redistribution exceeds the Secretary's authority under 42 U.S.C. § 1395ww(d)(5)(I)(i)); *Bridgeport*, 108 F.4th at 888–90 (affirming same).  The IPPS payment system is an extraordinarily detailed framework with very specific subsections and paragraphs specifying how the complicated payment methodology is to work.  Subparagraphs (A)-(H) that precede § 1395ww(d)(5)(I), identify distinct exceptions and adjustments to the payment rates prescribed under the IPPS in very specific circumstances, such as outlier cases, hospitals with indirect costs of medical education, and regional and national referral centers.  In the context of the statute as a whole, 42 U.S.C. § 1395ww(d)(5)(I)(i) does not convey sweeping authority for the Secretary to apply across-the-board rate reductions but, rather, only exceptions

and adjustments of the kind similar to what appears in the preceding subparagraphs.  The Secretary cannot use § 1395ww(d)(5)(I) in a manner that vitiates the language and purpose of the rest of the statute, including § 1395ww(d)(5)(A)-(H).  There must be limits to the authority granted to CMS under this "catchall" provision or it would swallow-up the entire Medicare Act.  *See Bridgeport*, 108 F.4th at 888 ("[T]he adjustments provision in § 1395ww(d)(5)(I)(i) is a subtle device with limits that can't be used for a severe restructuring of the statutory scheme or a substantial departure from the default amounts.") (internal citations and quotations omitted).

102.    Moreover, the Secretary cannot use his "exceptions and adjustments" authority to adopt the budget neutrality adjustment in the unlawful Low Wage Index Redistribution because the Low Wage Index Redistribution itself contravenes the statutory requirements of subsection (d)(3)(E).  *Bridgeport*, 108 F.4th at 889 (the Low Wage Index Redistribution exceeds the limits of subsection (d)(5)(I) because it "does not fill a gap left by statutory silence," nor "complement" subsection (d)(3)(E), but instead "supplant[s] it with a new regime entirely") (alteration in original) (internal citations and quotations omitted).

103.    To the extent that the Secretary suggests in the alternative that he has the authority to implement the Low Wage Index Redistribution under subsection (d)(5)(I), this assertion contravenes the clear language of (d)(5)(I), which authorizes adjustments only to "payment amounts," not to any wage index value established under subsection (d)(3)(E).  *See Bridgeport*, 589 F. Supp. 3d at *15 n.11 ("The 'exceptions and adjustments' provision also authorizes adjustments only to "payment amounts," not to any wage index value established under § 1395ww(d)(3)(E)(i).").

104.    Moreover, the Low Wage Index Redistribution exceeds the Secretary's "exceptions and adjustments" authority because it contravenes the specific and detailed wage index provisions.  "Reading the general 'exceptions and adjustments' provision to allow the agency to adopt the low wage index hospital policy would gut the specific statutory provisions in place to calculate the wage index . . . [and] would render meaningless the statutory framework in place to calculate wage index levels."  *Bridgeport*, 589 F. Supp. 3d at 14–15.  In short, the

Secretary cannot "get around clear statutory directives by invoking the exceptions and adjustments provision," and his exceptions and adjustments authority is not "unbounded." *Id.* at 15; *Bridgeport*, 108 F.4th at 888–90 (affirming same).

(2)    *The Secretary Did Not Act by Regulation as Required by 42 U.S.C. § 1395ww(d)(5)(I)*

105.    The Secretary is not acting by regulation, and, therefore, is not adhering to the requirements of § 1395ww(d)(5)(I)(i).  Subsection (d)(5)(I)(i) requires adjustments made under this exception to be "provide[d] by regulation."  Similarly, 42 U.S.C. § 1395hh(a) requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for service . . . shall take effect unless it is promulgated by the Secretary by regulation. . . ."  The Secretary did not promulgate regulations to effectuate the FFY 2020–2023 Payment Reductions, but merely applied it as a rate adjustment in the preamble to the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules.  Thus, even if the Secretary had the authority to implement the Payment Reductions (which he does not), he implemented them in a way that violates the statutory requirements of their allegedly authorizing statute (and others) and, therefore, is invalid.

(3)    *The Secretary's Exceptions and Adjustments Authority Does Not Authorize Budget Neutrality Adjustments, Except With Respect to Transfer Cases*

106.    Even if the Secretary had the authority to institute the Low Wage Index Redistribution under § 1395ww(d)(5)(I)(i) (which he does not), such exceptions and adjustments authority does not permit his implementation of the policy in a budget neutral manner.  Rather, subsection (d)(5)(I)(ii) provides the Secretary with limited authority to adopt budget neutrality adjustments only in the context of adjustments for transfer cases and does not provide any similar budget neutrality authority for any other type of adjustment.

**C.**    <u>The Secretary has Failed to Provide a Valid Rationale for the Low Wage Index Redistribution in Violation of the APA</u>

107.    Under the APA, the Secretary is prohibited from taking actions and making findings and conclusions that are arbitrary and capricious, and conduct is considered arbitrary

85

and capricious when it is not explained, or when it is not rationally explained.  5 U.S.C.

§ 706(2)(A).  Agency action is considered arbitrary and capricious "if the agency has relied on

factors which Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or the

product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983.)  The Secretary's rationale for the Low Wage Index Redistribution violates

the APA.

        108.    In the FFY 2020 IPPS Final Rule, the Secretary stated that "the intent of [the Low

Wage Index Redistribution] is to increase the accuracy of the wage index as a technical

adjustment, and not to use the wage index as a policy tool to address non-wage issues related to

rural hospitals, or the laudable goals of the overall financial health of hospitals in low wage areas

or broader wage index reform."  84 Fed. Reg. at 42,331.  The Secretary reiterated this

counterfactual assertion regarding increased "accuracy" in the FFY 2021 and 2022 IPPS Final

Rules, and referred back to this reasoning in defense of the FFY 2023 IPPS Final Rule.  *See* 85

Fed. Reg. at 58,766 ("the intent of the low wage index hospital policy is to increase the accuracy

of the wage index as a technical adjustment and not to use the wage index as a policy vehicle");

86 Fed. Reg. at 45,179 ("we believe that the low wage index hospital policy increases the

accuracy of the wage index as a relative measure of wages across different geographic regions");

87 Fed. Reg. at 49,007 (referring commenters to responses in FFY 2020 IPPS Final Rule, 84

Fed. Reg. at 42,325–32; *see also id.* (reiterating that "the wage index is not a policy tool but

rather a technical adjustment").  It is, of course, Orwellian doubletalk for the Secretary to assert

that he makes the wage index, which is required by statute to be data-driven, more accurate by

changing the wage index values for 25% of IPPS hospitals so that they are not based on actual

data.

        109.    Further, the Secretary asserts that under this Redistribution "the wage index for

low wage index hospitals will appropriately reflect the relative hospital wage level in those areas

compared to the national average hospital wage level," FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,331; *see also* FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,766; FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179; FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 49,007, because "it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag between the time a hospital increases employee compensation and the time these increases are reflected in the wage index." 84 Fed. Reg. at 42,328 (incorporated by reference into FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 49,007) (emphasis added); *see also* FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,766; FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179. Thus, the Secretary denies he is using the wage index as a policy tool while implicitly acknowledging that he is using the Low Wage Index Redistribution to change hospital labor markets because he expects wage payments in low-wage markets to *increase* under the policy. He emphasized that the Redistribution provides "an *opportunity* for low wage hospitals to increase their employee compensation." FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,328 (referred back to in FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 49,007); *see also* FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,436 ("we adopted a policy to provide an opportunity for certain low wage index hospitals to increase employee compensation by increasing the wage index values for certain hospitals with low wage index values"); FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179 ("our current policy will have the intended effect of providing the opportunity for low wage hospitals to increase compensation"). But the Secretary does not require low wage hospitals to use the increased payments to pay for higher wages. The Secretary's assertion that the wage index for the lowest wage area hospitals will increase in the future is nothing more than wishful speculation, at best, and thus, the Redistribution lacks a factual predicate.

110.    In other words, the Secretary asserted that by making wage index values inaccurate for 25% of the nation's hospitals, he actually was making it *more* accurate because the data would reflect what the Secretary conjectures it could possibly become if low wage index hospitals adjust their wages under the policy. This circularity is arbitrary and capricious, irrational, and does not provide a legitimate basis for the Low Wage Index Redistribution.

Moreover, the rationale is unsupported by any data or studies, and the Secretary also relied on factors which Congress has not intended him to consider.  The Redistribution therefore violates the APA and is invalid.

111.    Additionally, the FFY 2020, 2021, 2022, and 2023 Final Rules failed to sufficiently address commenters' questions and concerns.  For example, in the FFY 2020 IPPS Final Rule, the Secretary paraphrased comments questioning his authority to adopt the budget neutrality adjustment under subsection (d)(5)(I) because "(1) this 'catchall' cannot be used in a manner that vitiates the language and purpose of the rest of the statute, including section [1395ww(d)(5)(A) through (H)], as there must be limits to the authority granted to CMS under this section; (2) CMS is not acting by regulation, and, therefore, is not following [subsection (d)(5)(I)]; and (3) if CMS does have the authority to make this change, this special authority is not required to be done in a budget neutral manner, as is clear from the statute where paragraph (d)(5)(I)(ii) references budget neutrality, but paragraph (d)(5)(I)(i) does not, and as is clear from relevant case law."  84 Fed. Reg. at 42,331.  In response, the Secretary merely stated his "belie[f that] we could use our broad authority under that provision to promulgate such an adjustment." *Id.*  In the FFY 2021 IPPS Final Rule, in response to commenters' questioning of his statutory authority to adopt the policy, he simply referred commenters to his prior response in the FFY 2020 IPPS Final Rule.  *See* 85 Fed. Reg. at 58,767 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326-42,332, for a discussion on subsection (d)(5)(I)); *see also* FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–42,332); FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 49,007 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–42,332).

## CAUSES OF ACTION

### COUNT I:
**Violation of the APA and the Medicare Act**
***(The Low Wage Index Redistribution is Contrary to Wage Index Law)***

112.    The Hospitals repeat and reallege paragraphs 1–111 as if set forth fully herein.

113.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

114.     The Secretary lacks the statutory authority to apply the Low Wage Index Redistribution in FFYs 2020, 2021, 2022, and 2023.  The Medicare Act and regulations prescribe precise payment methodologies under the IPPS.  The Low Wage Index Redistribution directly contravenes the plain language of 42 U.S.C. § 1395ww(d)(3)(E), and the implementing regulations, which require the Secretary to base the wage index on actual data.  Because the Low Wage Index Redistribution violates § 1395ww(d)(3)(E) (and the implementing regulations), neither this statute, 42 U.S.C. § 1395ww(d)(5)(I)(i), nor any other provision of law authorizes the budget neutrality Payment Reductions associated with it.

### COUNT II:
### Violation of the APA and Medicare Act
### *(The Low Wage Index Redistribution is Unlawful Under 42 U.S.C. § 1395ww(d)(5)(I))*

115.     The Hospitals repeat and reallege paragraphs 1–114 as if set forth fully herein.

116.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

117.     The exception contained within 42 U.S.C. § 1395ww(d)(5)(I)(i) does not authorize the Secretary to inflate the wage index values for hospitals in low wage markets as the Secretary has done or to apply across-the-board 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions in FFYs 2020, 2021, 2022, and 2023, respectively, to fund the unauthorized and unlawful Low Wage Index Redistribution.  Thus, the Payment Reductions that are part of the Low Wage Index Redistribution in FFYs 2020, 2021, 2022, and 2023 are invalid and must be set aside.

118.     Specifically, 42 U.S.C. § 1395ww(d)(5)(I) does not permit the imposition of a budget neutrality adjustment, except in transfer cases under clause (ii).  The Low Wage Index Redistribution alters certain wage index values and is not an "adjustment[] . . . for transfer cases"

that can be imposed in a budget neutral manner under subsection (d)(5)(I)(ii).  Thus, the 0.2016%, 0.2030%, 0.1971%, and 0.1854% budget neutrality Payment Reductions in FFYs 2020, 2021, 2022, and 2023, respectively, are unlawful and must be set aside.

119.    42 U.S.C. § 1395ww(d)(5)(I)(i) requires adjustments made under this exception to be "provide[d] by regulation."  Similarly, 42 U.S.C. § 1395hh(a) prohibits any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary by regulation.  The Secretary did not promulgate a regulation to effectuate the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions that are part of the Low Wage Index Redistribution in FFYs 2020, 2021, 2022, and 2023, respectively, but merely applied them as a rate adjustment as published in the preamble to the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules.  Thus, the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions violate the express terms of 42 U.S.C. § 1395ww(d)(5)(I)(i) and 42 U.S.C. § 1395hh(a), and are therefore invalid under the APA and must be set aside.

<u>**COUNT III:**</u>
**Violation of the APA and the Medicare Act**
*(The Low Wage Index Redistribution is Arbitrary and Capricious)*

120.    The Hospitals repeat and reallege paragraphs 1–119 as if set forth fully herein.

121.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

122.    In the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules, the Secretary stated, reiterated, and incorporated by reference his belief that the Low Wage Index Redistribution "aims to increase the accuracy of the wage index as a relative measure because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag between the time a hospital increases employee compensation and the time these increases are reflected in the wage index…"  84 Fed. Reg. at 42,328; 85 Fed. Reg. at 58,766; 86 Fed. Reg. at 45,17987; Fed. Reg. 49,007 (referring to 84 Fed. Reg. at 42,331).  The Secretary did not identify any studies or data to support his rationale.  Indeed, the "data lag"

cited by the Secretary impacts every IPPS hospital and, in fact, might help low-wage hospitals in labor markets with falling hospital wages by delaying the resulting reduction to their wage index values.  There is no logical reason for the Secretary to have treated the low wage index hospitals differently than all IPPS hospitals, and the Secretary did not provide an explanation.  As such, the Redistribution is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Thus, the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions for FFYs 2020, 2021, 2022, and 2023, respectively, are invalid and must be set aside.

123.    In the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules, the Secretary failed to adequately explain the rationale for the Low Wage Index Redistribution.

124.    In the FFY 2020 IPPS Final Rule, the justification given by the Secretary for implementing his Low Wage Index Redistribution was that it would "increase the accuracy of the wage index as a relative measure because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation."  84 Fed. Reg. at 42,328; *see also* FFY 2021 IPPS Final Rule, 85 Fed. Reg. at 58,766 (echoing language from the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,328); FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179 (broadly incorporating the explanations in the FFY 2020 and FFY 2021 IPPS Final Rules and noting that the Low Wage Index Redistribution "increases the accuracy of the wage index . . . because it allows low wage index hospitals to increase their employee compensation in ways that we would expect if there were no lag in reflecting compensation adjustments in the wage index."); FFY 2023 IPPS Final Rule, 87 Fed. Reg. at 49,007 (referring back almost exclusively to reasoning in FFY 2020 IPPS Final Rule). However, the Secretary did not rationally explain (nor could he) how increasing the wage index values for 25% of IPPS hospitals in a way that conflicts with the applicable wage data improves the accuracy of those wage values.

125.    And, in fact, in the FFY 2022 and 2023 IPPS Final Rules, the Secretary appears to acknowledge that the low wage index hospital policy is different from a mere technical adjustment, referencing the worthiness of his "policy goal."  FFY 2023 IPPS Final Rule, 87 Fed.

Reg. at 49,006; *see also* FFY 2022 IPPS Final Rule, 86 Fed. Reg. at 45,179 ("[T]he OIG report . . . does not . . . suggest the policy goal we are hoping to achieve is unworthy.  Nor does the OIG report suggest we lack authority to pursue that goal.").

126.    In the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules, the Secretary stated and reiterated that the Low Wage Index Redistribution was not being used as a policy tool (only a technical adjustment), *see, e.g.*, 84 Fed. Reg. at 42,331; 85 Fed. Reg. at 58,766; 86 Fed. Reg. at 45,180; 87 Fed. Reg. 49,007, while also referring back to his intent that it would provide certain low wage index hospitals with a so-called "opportunity to increase employee compensation." *See, e.g.*, 84 Fed. Reg. at 42,327 ("we note the policy is intended to provide an opportunity for low wage hospitals to increase their employee compensation, and we expect them to do so…"); 85 Fed. Reg. at 58,436 ("we adopted a policy to provide an opportunity for certain low wage index hospitals to increase employee compensation by increasing the wage index values for certain hospitals with low wage index values"); 86 Fed. Reg. at 45,179 ("our current policy will have the intended effect of providing the opportunity for low wage hospitals to increase compensation").  The Secretary touts his expectation that hospitals will increase their employee compensation as a result of wage index increases under this policy, *see, e.g.*, 84 Fed. Reg. at 42,327; 86 Fed. Reg. at 45,179, but the Secretary did not <u>require</u> the low wage hospitals to use the increased payments to pay for higher wages.  The Secretary's assertion that the wage index for the lowest wage area hospitals <u>will</u> increase in the future is thus unreasonable.

127.    Further, contrary to this technical correction language, the Low Wage Index Redistribution does not include more recent employee compensation data in the calculation of the wage index but, rather, arbitrarily and counterfactually increases the wage index values of certain hospitals so that they are not based on actual data.  This circularity is arbitrary and capricious, irrational, and does not provide a legitimate basis for the Low Wage Index Redistribution.  Moreover, the rationale is unsupported by any data or studies, is in contrast with comments submitted to the Secretary indicating the policy's lack of benefits for hospitals it is

intended to help, and the Secretary relied on factors which Congress has not intended him to consider.  The Redistribution therefore violates the APA and is invalid.

**COUNT IV:**
**Violation of the APA and the Medicare Act**
***(The Secretary's Actions Under 42 U.S.C. § 1395ww(d)(5)(I) are Unlawful Because the Secretary Failed to Observe the Procedure Required by Law)***

128.    The Hospitals repeat and reallege paragraphs 1–127 as if set forth fully herein.

129.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are found to be without observance of procedure required by law.  5 U.S.C. § 706(2)(D).  The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented.  *See* 5 U.S.C. § 553.  The Medicare Act also prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary by regulation.  42 U.S.C. § 1395hh(a).

130.    In the FFY 2020 IPPS Final Rule, the Secretary failed to address commenters' questions and comments regarding the exercise of his "exceptions and adjustment" authority under 42 U.S.C. § 1395ww(d)(5)(I).

131.    In the FFY 2021 IPPS Final Rule, the Secretary incorporated his discussion of budget neutrality and his "exceptions and adjustments" authority from the FFY 2020 IPPS Final Rule, adding only his statement of belief that he has authority "to promulgate a budget neutrality adjustment to the national standardized amount and that this authority is not limited to transfer cases."  85 Fed. Reg. at 58,767.

132.    In the FFY 2022 IPPS Final Rule, the Secretary merely referenced discussion of the issue in the FFY 2020 and FFY 2021 Final Rules and restated his "belie[f] that we have broad authority under [42 U.S.C. § 1395ww(d)(5)(I)] to promulgate a budget neutrality

adjustment to the national standardized amount and that this authority is not limited to transfer cases."  86 Fed. Reg. at 45,180.

133.    In the FFY 2023 IPPS Final Rule, in response to commenters' questioning of the Secretary's statutory authority to adopt the policy, he simply referred commenters to his prior response in the FFY 2020 IPPS Final Rule.  *See* 87 Fed. Reg. at 49,007 (referring commenters to the FFY 2020 IPPS Final Rule, 84 Fed. Reg. at 42,326–42,332).

134.    It is thus not clear that the Secretary considered the commenters' relevant questions and requests concerning his invocation of that authority to reduce the IPPS standardized amount by 0.2016%, 0.2030%, 0.1971%, and 0.1854% in FFYs 2020, 2021, 2022, and 2023, respectively, and/or to implement the Low Wage Index Redistribution.  Thus, the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions for FFYs 2020, 2021, 2022, and 2023, respectively, are invalid and must be set aside.

## COUNT V:
### Violation of the APA
***(The Low Wage Index Redistribution is Unsupported by the Evidence in the Record)***

135.    The Hospitals repeat and reallege paragraphs 1–134 as if set forth fully herein.

136.    The Low Wage Index Redistribution first imposed in FFY 2020, and continued in FFYs 2021, 2022, and 2023, is unlawful and must be set aside because it is unsupported by evidence in the record.  The data on wages and wage-related costs in the record support the wage index without the artificial adjustment of wage index values for hospitals in the lowest quartile. The Secretary points to no evidence in the record concerning "the wages and wage-related costs of subsection (d) hospitals" that supports the Low Wage Index Redistribution.  In addition, the Secretary has provided no data, studies, or other substantial evidence supporting the Secretary's conjecture that the hospitals in the low wage areas will increase employee compensation if their wage indexes are increased.  Rather, the Redistribution itself causes the wage index values for one-quarter of IPPS hospitals to be inaccurate through the Secretary's counterfactual, post-data adjustment based on the hospital wages that he speculates may be paid in these labor markets in the event wage index values are increased, without any supporting data and without any

requirement that the increased payments resulting from the increased wage index values will be used to increase wages.

## COUNT VI:
### Mandamus

137.    The Hospitals repeat and reallege paragraphs 1–136 as if set forth fully herein.

138.    The Secretary has the non-discretionary duty to pay the Hospitals fully at the amounts to which they are entitled under the law, without applying the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions, which violate the Medicare Act, and implementing regulations, and the APA.  Under 28 U.S.C. § 1361, the Hospitals are entitled to have this Court issue a writ of mandamus requiring the Secretary to order the Hospitals' MACs to make new determinations for FFYs 2020, 2021, 2022, and 2023 to reverse the effect of applying the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions, respectively, and pay appropriate underpayment interest thereon pursuant to 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## COUNT VII:
### All Writs Act

139.    The Hospitals repeat and reallege paragraphs 1–138 as if set forth fully herein.

140.    The Secretary's implementation of the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions in FFYs 2020, 2021, 2022, and 2023, respectively, violated the Medicare Act and APA.  The Hospitals are entitled to their full payment under IPPS, without the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions.  Under the All Writs Act, 28 U.S.C. § 1651, and other authority, the Hospitals are entitled to issuance of an order requiring the Secretary to order the Hospitals' MACs to make new determinations for FFYs 2020, 2021, 2022, and 2023 to reverse the effect of applying the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions, and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

**COUNT VIII:**
**Violation of the APA and Medicare Act**
*(The Self-Disallowance Regulation Impermissibly Conflicts with 42 U.S.C. §1395oo)*

141.     The Hospitals repeat and reallege paragraphs 1–140 as if set forth fully herein.

142.     The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

143.     The PRRB's authorizing Medicare statute, 42 U.S.C. § 1395oo, expressly entitles a hospital to appeal the Secretary's Federal Register determination if:  (1) the provider is "dissatisfied" with the Secretary's final determination, (2) the amount in controversy is met, and (3) the provider files the appeal within 180 days of the notice of the determination in the Federal Register.  *Id.* § 1395oo(a) & (b) (setting forth amount-in-controversy requirement for group appeals).  Based on this third requirement, a provider's right to appeal a Federal Register determination to the PRRB and, if successful, obtain relief cannot be dependent on self-disallowing the issue in the cost report.  This is because (1) the statute gives hospitals only 180 days to file an appeal from Federal Register determinations and (2) any cost report filings would not be due until <u>after</u> the Federal Register appeal was filed.

144.     That was precisely the case here.  For example, the FFY 2020 IPPS Final Rule was published in the Federal Register on August 16, 2019.  This made any appeal of the Secretary's final determinations in the FFY 2020 IPPS Final Rule due no later than mid-February, 2020.  In contrast, the first hospital cost-reporting periods that would include services provided during FFY 2020 would be those ending on October 31, 2019 (covering the first month of FFY 2020).  The filing for such a cost report would ordinarily not have been due until the end of March 2020, *see* 42 C.F.R. §412.34(f)(2), and due to the Covid-19 Public Health Emergency, was not actually due until June 30, 2020.[10]  Indeed, for all of the contested cost reports here in

---

[10]  Due to the COVID-19 Public Health Emergency ("PHE"), CMS extended filing deadlines for cost reporting periods ending in 2019 and 2020. *See* COVID-19 Frequently Asked Questions (FAQs) on Medicare Fee-for-Service (FFS) Billing, at 116, available at: https://www.cms.gov/files/document/03092020-covid-19-faqs-508.pdf.

every fiscal year, the ordinary cost report filing deadlines including any CMS extensions were, <u>at the earliest, several months after the Federal Register appeal filing deadline</u> for an appeal of the FFY 2020, FFY 2021, and FFY 2022 Final Rules.

145.    Accordingly, the PRRB's factual findings included in the FFY 2020, FFY 2021, and FFY 2022 EJR Decisions that certain Hospitals did not include "'an appropriate claim for the specific item' that is the subject of the group appeal, as required under 42 C.F.R. § 413.24(j)," the consequence of which is to deny any reimbursement for the item under 42 C.F.R. § 405.1873(f)(2)(ii) for the cost-reporting period, impermissibly conflicts with these Hospitals' statutory appeal rights under § 1395oo of the Medicare Act.

146.    Therefore, the Self-Disallowance Regulation and the PRRB's factual findings against those Hospitals thereon, *see ¶¶27-32, supra,* are invalid under the APA and must be set aside.

### COUNT IX:
#### Violation of the APA and the Medicare Act
*(The Self-Disallowance Regulation and the PRRB's Findings Thereon are Arbitrary and Capricious)*

147.    The Hospitals repeat and reallege paragraphs 1–146 as if set forth fully herein.

148.    The APA prohibits the Secretary from implementing the Medicare Act through actions, findings or conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

149.    CMS's adoption of the Self-Disallowance Regulation and application of it to certain hospitals' cost years in the FFY 2020, FFY 2021, and FFY 2022 group appeals is arbitrary and capricious for numerous reasons, including, for example, that each of CMS's asserted rationales for the policy has no applicability to regulatory challenges, such as the instant one, that the PRRB is powerless to correct.

150.    By way of further example, CMS's adoption of the Self-Disallowance Regulation and application of it to any Hospitals' claims in these FFY 2020, FFY 2021, and FFY 2022 group appeals is arbitrary and capricious because appeals of the Secretary's final determinations

in the FFY 2020, FFY 2021, and FFY 2022 IPPS Final Rules were due before any hospital cost reports covering those relevant FFYs were due to be filed.  The Hospitals' cost reports at issue were not due until multiple months after the Hospitals' appeals of the FFY 2020, FFY 2021, and FFY 2022 IPPS Final Rules were due, and multiple months after the Hospitals notified the Secretary of their dissatisfaction with the same Final Rules by timely filing their PRRB appeals from the relevant Federal Register publications.

151.    By way of further example, CMS's adoption of the Self-Disallowance Regulation and application of it to certain Hospitals' claims in their FFY 2020, FFY 2021, and/or FFY 2022 group appeals is arbitrary and capricious because, the MAC and CMS were already on notice that those Hospitals protested the reduction in the IPPS rates made to offset the Low Wage Index Redistribution.  When those Hospitals filed the cost reports at issue, they had already explicitly protested the reduction in the IPPS rates made to offset the Low Wage Index Redistribution in their FFY 2020, FFY 2021, and/or FFY 2022 group appeals.  Thus, both the MAC and CMS had already been notified that those Hospitals were protesting their FFY 2020, FFY 2021, and/or FFY 2022 IPPS rates based on the Payment Reduction made to offset the Low Wage Index Redistribution.  Similarly, for years, and before the challenged cost reports at issue were filed, hospitals, including some plaintiffs and other hospitals, had already been litigating the reduction in the IPPS rates made to offset the Low Wage Index Redistribution before the PRRB and in court (as reflected, *e.g.*, in the *Bridgeport* and *Kaweah Delta* cases).  Thus, the Secretary was on notice that hospitals are challenging the IPPS rates based on this issue.  At a minimum, to the extent that hospitals were required to have protested the reduction in their IPPS rates made to offset the Low Wage Index Redistribution, these Hospitals should be found to have satisfied any "substantive claim" requirement.

152.    Accordingly, CMS's adoption of the Self-Disallowance Regulation and application of it to certain Hospitals' claims in their FFY 2020, FFY 2021, and/or FFY 2022 group appeals violates the APA and is invalid.

## **REQUEST FOR RELIEF**

WHEREFORE, the Hospitals respectfully request:

1.      An order declaring invalid and vacating the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions for FFYs 2020, 2021, 2022, and 2023, respectively, and setting aside the portion of the FFY 2020, 2021, 2022, and 2023 IPPS Final Rules that imposed the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions;

2.      An order requiring the Secretary to recalculate the Hospitals' FFY 2020, 2021, 2022, and 2023 IPPS payments after removing the effect of the 0.2016%, 0.2030%, 0.1971%, and 0.1854% Payment Reductions, and make the additional FFY 2020, 2021, 2022, and 2023 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d);

3.      An order declaring invalid and vacating the Secretary's Self-Disallowance Regulation and the PRRB's findings thereon in the FFY 2020, 2021, and 2022 EJR Decisions related to certain Hospitals which the Board has specifically found failed to include "an appropriate claim for the specific item" "as required under 42 C.F.R. § 413.24(j)(1)";

4.      Legal fees and costs of suit incurred by the Hospitals; and

5.      Such other relief as this Court deems just and proper.

Dated:  September 30, 2024                    Respectfully submitted,

                                              /s/ David J. Vernon
                                              David J. Vernon (D.C. Bar. No. 1030537)
                                              Kelly A. Carroll (D.C. Bar No. 1018485)
                                              Rachel L. Zacharias (D.C. Bar No. 1779837)
                                              HOOPER LUNDY & BOOKMAN, P.C.
                                              401 9th Street, NW, Suite 550
                                              Washington, DC 20004
                                              Tel:  (202) 580-7700
                                              E-Mail: dvernon@hooperlundy.com
                                              E-mail: kcarroll@hooperlundy.com
                                              E-mail: rzacharias@hooperlundy.com

                                              Lloyd A. Bookman (Cal. Bar. No. 89251)*
                                              HOOPER, LUNDY & BOOKMAN, P.C.
                                              1875 Century Park East, Suite 1600
                                              Los Angeles, California 90067
                                              Tel:  (310) 551-8111
                                              E-Mail: lbookman@hooperlundy.com

                                              * *pro hac vice* to be filed

                                              *Attorneys for Plaintiffs*